**Michael Emerson CORRELL, Petitioner–Appellant,**

v.

**Terry L. STEWART, Director, Arizona Department of Corrections, Respondent–Appellee.**

No. 95–99012.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1997.*

Decided March 9, 1998.

---

* This case has been reargued and resubmitted per the Orders of this Court of April 14, 1997 and September 25, 1997.

Brian R. Dando, Phoenix, Arizona, and
Charles J. Muchmore, Muchmore & Wall-

work, Phoenix, Arizona, for petitioner-appellant.

Paul J. McMurdie, Office of Attorney General, Criminal Appeals Section, Phoenix, Arizona, for respondents-appellees.

Before: SCHROEDER, O'SCANNLAIN and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Michael Emerson Correll was sentenced to death for participating in the execution-style shooting of three innocent victims in the Arizona desert. Convicted of first-degree murder, attempted first-degree murder, kidnapping, armed robbery, and first-degree burglary, he appeals the district court's denial of habeas corpus relief. We affirm the district court on all counts, except Correll's claim that he is entitled to a federal evidentiary hearing as to whether his trial counsel ineffectively assisted him at sentencing.

## I.

At approximately 12:30 a.m. on the morning of April 12, 1984, Guy Snelling and his companion, Debra Rosen, returned to the mobile home where Snelling resided after attending a Wang Chung concert. Throughout the preceding evening, Snelling had been drinking bourbon, and had consumed both cocaine and marijuana. Soon after Snelling and Rosen had gone to bed, John Nabors, Snelling's co-worker, knocked at the door of the mobile home, saying "Guy, it's me, John, I've got to talk to you—I've got to see you." When Snelling answered the door, he encountered Nabors and a man whom Nabors introduced as his friend, Rick. Snelling later identified "Rick" as Michael Correll.

Snelling let Nabors and Rick into the mobile home. Nabors asked Snelling if he had any speed and if he had a gun. After Snelling answered negatively, Nabors produced a gun, cocked it, aimed it at Snelling, and said "I hate to do this—I know you've got some money." At Nabors' direction, Snelling summoned Rosen and told her "we're being robbed." Rick secured Snelling's and Rosen's hands and feet with duct tape. Soon thereafter, a car pulled up to the mobile home, frightening Nabors and Rick. Nabors dragged Rosen into a bedroom while Rick remained with Snelling.

The occupants of the car were Robin Cady, who rented a room from Snelling, and her companion, Shawn D'Brito. When Cady and D'Brito entered the mobile home, Nabors held the gun up to Snelling's head and told the couple, "You guys just walked into a whole bunch of shit." Rick taped Cady's and D'Brito's hands and feet. Then, Nabors and Rick escorted Snelling throughout the mobile home, retrieving marijuana and approximately $4,700 in cash from various rooms and from Rosen's and Cady's purses.

About forty-five minutes later, Nabors and Rick forced Snelling, Cady, and D'Brito into Snelling's car. While Rick sat in the driver's seat, holding the gun, Nabors returned to the mobile home, explaining that he was going to "tape Debbie up a little better." When Nabors returned to the car, Rick drove the car to a deserted area nearby, where Nabors' truck was parked. Nabors got into his truck and, with Rick following in the car, drove to a desert area north of Phoenix. Nabors and Rick pulled Snelling, Cady, and D'Brito out of the car and forced them to lie on the ground. Rick told Snelling, "I'm going to have to knock you out now," and shot him in the head. The bullet entered Snelling's left earlobe, passed down the skull, chipped the vertebrae between the trachea and esophagus and came to rest in his jawbone. Miraculously, not only did Snelling survive, but he remained conscious and fully aware of his surroundings.

Meanwhile, Nabors had taken the gun. As Snelling watched, Nabors killed D'Brito and tried to shoot Cady, but the gun misfired. Cady pleaded for her life, but Nabors got down on one knee and told her, "Now, girl, just hold still," and finally succeeded in shooting her.

After Nabors and Rick had left, Snelling freed himself and ran to Cady. Seeing that she was swallowing her tongue, he ran to the

nearest residence to call his parents, who lived in a house next to his mobile home. Snelling told his mother that he had been shot in the head, and asked her to go next door and rescue Rosen before Nabors and Rick could return to harm her. Unfortunately, Snelling's parents found Rosen already dead from strangulation. Snelling also contacted the police and described both Nabors and Rick. The officers found Snelling "extremely excited," but "definitely coherent." They found D'Brito and Cady dead from gunshot wounds to the head.

While Snelling was hospitalized for his injury, the police showed him two photographic lineups. One of the lineups contained a photograph of Nabors, whom Snelling identified as one of his assailants. About a week later, a police detective showed Snelling another photographic lineup containing a photograph of Michael Correll, whom Snelling identified as the second assailant.

On April 20, 1984, Michael Correll was apprehended at his father's residence in Las Vegas, Nevada, where he had fled. In addition to Snelling's lineup identification, the evidence incriminating Correll included a photographic lineup identification by a taxi driver who recalled picking up Correll from a Phoenix hotel on April 13 and driving him to the airport; boot prints that Correll had left at the crime scenes; Correll's known association with Nabors and his use of the alias "Rick Watson"; and a recorded phone call that Correll's brother, Terry, had placed to Correll in Nevada at the request of the police. During this call, Terry informed Correll that Nabors had been found dead in a hotel room after a police shootout, resulting in the following exchange:

Mike: Okay, uh, they don't know who I am.

Terry: Yeah, they don't?

Mike: Uhhuh (no)

Terry: Okay, right on.

Mike: Okay. Right on. Is it safe back there?

Terry: Um, probably not., haha, but you know um, because you know, um, I guess whoever, who, you know, whoever was

used, you know, you're worried about is uh, um is pretty mad at you too.

Mike: well, they don't know, they don't know (unintelligible) who I am.

Terry: Yeah, but one of the guys is still alive.

Mike: Right, well, he won't, he won't be for long.

Terry: Okay, well, I guess, you know.

Mike: I'll take care of business there.

Correll was subsequently charged with three counts of first degree murder, one count of attempted first degree murder, one count of first degree burglary, one count of armed robbery, and four counts of kidnapping.

Before Correll's trial began, Correll unsuccessfully moved for the appointment of new counsel, asserting that he and his court-appointed attorney did not "see eye to eye on matters in the case." In addition, Correll moved to suppress evidence, including marijuana, that the police had seized from his car and the Las Vegas apartment at the time of his arrest. After the prosecution agreed not to offer as evidence any of the items the suppression motion covered, the court dismissed the motion as moot. Finally, Correll moved for a mental examination pursuant to Ariz. R.Crim. P. 11. During a colloquy with the prosecution and defense counsel concerning this motion, the trial judge, Judge Howe, stated:

I got a call from Dr. Garcia [the court-appointed psychiatrist] Friday. He looked at Mr. Correll and said he is, in Dr. Garcia's word, antsy, but he has no pathology of any sort to indicate that there is any mental difficulty or that there ever has been and he sees no grounds for proceeding with the Rule 11 unless you have some other information.

When he learned that the defense had no further information, Judge Howe denied the Rule 11 motion, observing: "Your [sic] are disgustingly healthy, Mr. Correll, mentally at least, according to Dr. Garcia."

Correll's trial began on October 16, 1984, and lasted for three days. Rather than calling any witnesses for the defense, Correll's attorney sought through cross-examination

to present a defense of misidentification—namely, that Snelling had wrongly identified Correll as one of his assailants, and that it was reasonably likely that Correll's brother Terry, who resembled Correll, had committed the crimes in Correll's stead. Of the twenty witnesses the prosecution called, Correll's attorney cross-examined eleven. His questioning focused on two areas. First, he directly attacked the reliability of Snelling's identification. He elicited testimony from Snelling regarding the alcohol and drugs that Snelling had consumed during the evening preceding the murders, available sources of light during the crimes, and the acuity of Snelling's vision, with and without the glasses he customarily wore. Correll's attorney also cross-examined Terry Correll about his resemblance to his brother. Second, Correll's counsel attempted to discount the physical evidence of Michael Correll's presence at the crime scenes by casting doubt on the reliability of the boot prints, pointing out that Correll's fingerprints had not been found in Snelling's mobile home, and establishing that it was impossible to determine the date of the fingerprints Correll had left inside Nabors' truck.

The jury found Correll guilty on all counts. At Correll's November 23, 1984 pre-sentencing hearing, which lasted twenty-three minutes, his counsel again called no witnesses and presented no evidence. Correll's attorney had submitted a brief sentencing memorandum devoting less than one page to mitigating circumstances, and failing to discuss Correll's psychiatric condition at the time of the murders.

Similarly, his argument at sentencing occupied roughly eight transcript pages and, beyond a passing allusion to the fact that Correll's parents had abandoned him when he was fourteen years old, made no reference to Correll's psychiatric condition. Correll's counsel again failed to call any witnesses or produce any evidence. He declined to cross-examine the State's witness. At the conclusion of the brief hearing, Judge Howe found four aggravating circumstances and no mitigating circumstances, and sentenced Correll to death on each of the murder counts.

On direct appeal, the Arizona Supreme Court affirmed Correll's convictions. However, in its January 28, 1986 opinion, the court concluded that the trial court had erred in determining that Correll had intended to kill Debra Rosen, and that the aggravating circumstance stemming from the commission of "one or more other homicides" had been wrongfully applied retroactively in Correll's sentence. Accordingly, the Arizona Supreme Court modified Correll's death sentence for the murder of Debra Rosen to a sentence of life imprisonment and invalidated the "other homicides" aggravating factor. *See State v. Correll,* 148 Ariz. 468, 715 P.2d 721, 730–31, 734–35 (1986). After reweighing the remaining aggravating circumstances against Correll's claimed mitigating factors, the court affirmed Correll's other three death sentences. *Id.* 715 P.2d at 736.

On January 27, 1987, Correll timely filed a petition for post-conviction relief pursuant to Ariz. R.Crim. P. 32. In this petition, Correll asserted multiple violations of his constitutional rights, including his right to the effective assistance of counsel during the guilt and penalty phases of his trial, his right to confrontation, and his right to reliability in capital sentencing. Correll's claim of ineffective assistance of counsel during the guilt phase of his trial was based upon his attorney's failure to investigate his mental state at the time of the offense and to develop and present evidence that he did not have the requisite mens rea for first degree murder. Correll did not claim that his counsel was ineffective for mishandling the misidentification defense actually presented at trial. Correll later filed five supplements to his petition, adducing evidence of his mental impairment and his attorney's ineffectiveness. On May 14, 1987, the trial court summarily dismissed Correll's petition. Correll's motion for rehearing was subsequently denied, and the Arizona Supreme Court denied review without comment on July 8, 1987.

On September 15, 1987, Correll filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Correll alleged fifty-three constitutional violations at trial, at sentencing, and during the appeal process. On July 22, 1993, the district court deemed twenty-six

of Correll's claims to be procedurally barred. On March 1, 1995, in an 82–page opinion, the district court entered summary judgment against Correll on his remaining constitutional claims. On March 27, 1995, the district court denied Correll's motion under Fed. R.Civ.P. 59 to alter or amend its summary judgment order. Correll timely appealed to this court on April 25, 1995.

On appeal, Correll asserts four main claims: 1) he disputes the district court's denial of his request for an evidentiary hearing on his ineffective assistance of counsel claims; 2) he alleges that the trial judge's informal *ex parte* communication with the court-appointed psychiatric expert, Dr. Garcia–Bunuel, violated his due process rights under *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); 3) he asserts that testimony at trial that he had possessed marijuana at the time of arrest violated his due process rights; and 4) he argues that the Arizona Supreme Court violated his Eighth Amendment rights by reweighing the aggravating and mitigating circumstances in a conclusory manner after invalidating one of the aggravating circumstances the trial court had found.

■ We review de novo a district court's grant of summary judgment denying a writ of habeas corpus. *Jones v. Wood,* 114 F.3d 1002, 1008 (9th Cir.1997). Because Correll's petition was filed prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, the provisions of the Act do not apply to this case. *Jeffries v. Wood,* 114 F.3d 1484, 1495–1496 (9th Cir.1997) (en banc); *accord Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997).

## II.

■ Correll argues the district court should have granted him an evidentiary hearing on his ineffective assistance of counsel claims. To obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found

the relevant facts. *Jones,* 114 F.3d at 1010; *Hendricks v. Vasquez,* 974 F.2d 1099, 1103 (9th Cir.1992).

■ In addition, with certain exceptions not germane to this appeal, if the petitioner has failed to develop material facts in state court proceedings, he or she must demonstrate adequate cause for his or her failure and actual prejudice resulting from that failure. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 11, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992).

### A.

■ Correll assails his attorney's performance at the guilt phase of his trial on two grounds. First, Correll points to his counsel's failure to investigate and develop mens rea defenses based on Correll's psychiatric history and his substance abuse on the night of the murders. Second, Correll asserts that his attorney mishandled the misidentification theory presented in Correll's defense. To establish a colorable claim of ineffective assistance of counsel, Correll must demonstrate that his counsel's performance at trial was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Under this standard, Correll's allegation of ineffectiveness for failing to develop a mens rea defense, even if proven, does not support a colorable claim. This defense would have conflicted with the primary defense theory of misidentification. Thus, it was within the broad range of professionally competent assistance for Correll's attorney to choose not to present psychiatric evidence which would have contradicted the primary defense theory. *See United States v. Stern,* 519 F.2d 521, 524–25 (9th Cir.1975) (failure to pursue an insanity defense which conflicted with principal defense theory not ineffective assistance of counsel).

■ Correll further argues that he is entitled to a federal evidentiary hearing on his contention that his counsel did not present an effective misidentification defense. However, this claim is barred because he has failed

to establish cause for his failure to develop the factual basis of this claim in state court. *See Tamayo–Reyes*, 504 U.S. at 11, 112 S.Ct. at 1721. True, Correll's petition for state post-conviction relief filed pursuant to Ariz. R.Crim. P. 32 asserted guilt-phase ineffective assistance and demanded an evidentiary hearing. However, the only guilt-phase theory of ineffectiveness Correll asserted was the alleged failure to develop a mental competency defense. There is no mention of Correll's federal habeas theory that his attorney did not adequately present the misidentification defense, either in the Rule 32 petition itself or in the five supplements to the petition he subsequently filed. Correll and his post-conviction attorney had access to all the necessary information for raising this issue and for conducting a state-court evidentiary hearing. Because no legitimate cause prevented Correll from developing the material facts underlying this portion of his ineffectiveness claim in state court, we decline to order a federal evidentiary hearing on defense counsel's deficiencies in handling Correll's misidentification defense.

Correll argues that the cause and prejudice requirement does not apply because the *Tamayo–Reyes* rule is restricted to cases in which petitioners received a state-court hearing. Contrary to Correll's argument, *Tamayo–Reyes* endorses no such general limitation, although there are exceptions, as we found in *Chacon v. Wood*, 36 F.3d 1459, 1465–66 (9th Cir.1994).[1]

### B.

■ Correll further argues that the district court erred in denying him an evidentiary hearing on his claim of ineffective assistance of counsel at sentencing. We agree.

Correll's allegations, if taken as true, constitute a colorable claim of ineffective assistance of counsel. Correll asserts that during the month that elapsed between the jury verdict and the pre-sentencing hearing, his attorney met with him for just five minutes. Furthermore, the seven-page response to the state's sentencing memorandum that Correll's attorney submitted before the pre-sentencing hearing devoted barely a page to listing mitigating circumstances, virtually bare of any supporting evidence.

Similarly, the transcript of the pre-sentencing hearing reveals that Correll's attorney failed to call witnesses or present any evidence at the pre-sentencing hearing, although he stated on the record that he knew of people who were willing to testify on Correll's behalf. Neither in the pre-sentencing memorandum nor during the pre-sentencing hearing did Correll's attorney raise Correll's psychiatric history or condition at the time of the crimes as a potential mitigating factor, apart from alluding in passing to the fact that Correll's parents had abandoned him when he was fourteen years old. This almost complete absence of effort on the part of Correll's counsel to investigate, develop, and present mitigating evidence, including evidence of Correll's psychiatric history and his condition at the time of the murders, constitutes deficient performance "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

■ To be sure, failure to present mitigating evidence at a capital sentencing hearing does not always constitute ineffective assistance of counsel. *See Darden v. Wainwright*, 477 U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986). However, this decision should be the product of a reasoned choice. Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Confronted

---

1. *Tamayo–Reyes* modified *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), which established six circumstances under which a federal district court was required to hold an evidentiary hearing on habeas claims. *Id.* at 313, 83 S.Ct. at 757. *Tamayo–Reyes* considered one of those circumstances, namely when the material facts were not developed at the hearing, and held that a petitioner must show cause for

failing to develop the facts and prejudice resulting therefrom. In relevant part, *Chacon* held that the cause and prejudice requirement did not apply to the fourth *Townsend* circumstance, newly discovered evidence, because if the evidence is truly "newly discovered," it could not have been presented to the state court in the first instance. The *Chacon* exception is not at issue in this case.

with facts similar to this case in *Evans v. Lewis*, 855 F.2d 631 (9th Cir.1988), we concluded that counsel's assistance was constitutionally ineffective. *Id.* at 636–39. Thus, absent any reasonable investigation into potentially mitigating circumstances and any reasonable tactical explanation, we must conclude Correll has made a colorable claim of ineffective assistance of counsel at his capital sentencing.

In addition, we find that Correll has satisfied the "prejudice" prong of the *Strickland* test. Arizona law proscribes a sentence of death in the face of "mitigating circumstances sufficiently substantial to call for leniency." *See* Ariz. Rev. St. § 13–703(E). Thus, because trial counsel failed to present any evidence of Correll's purported mental illness which may have satisfied Ariz. Rev. St. § 13–703(E), Correll has "undermine[d] confidence in the outcome" of his sentencing, thereby establishing the requisite *Strickland* prejudice. *Strickland*, 466 U.S. at 694–96, 104 S.Ct. at 2068–69.

Despite the colorable claim of ineffective assistance that Correll has asserted, the state argues that under *Tamayo–Reyes* Correll is not entitled to a federal evidentiary hearing on this claim because he failed to develop the material facts surrounding the claim at the state-court level. The facts do not support the state's position. Correll properly alleged his counsel's ineffectiveness at sentencing in his Rule 32 state petition for post-conviction relief and requested an evidentiary hearing. This request was denied by the state court. When a state court denies an evidentiary hearing on a colorable ineffective assistance of counsel claim after proper request, a habeas petitioner has fulfilled the *Tamayo–Reyes* "cause" requirement. Simply put, the state cannot successfully oppose a petitioner's request for a state court evidentiary hearing, then argue in federal habeas proceedings that the petitioner should be faulted for not succeeding.

The procedural history is replete with evidence of Correll's assiduous attempts to develop the theory that his counsel provided ineffective assistance at sentencing. In his Rule 32 petition, Correll alleged that his trial counsel was ineffective for failing to investi-gate and present available evidence of mitigating circumstances at sentencing, including evidence of his mental health history and his psychiatric condition at the time of the murders. In supplemental materials submitted in support of his Rule 32 petition, Correll observed that his trial attorney had not requested a mental health diagnostic examination before sentencing pursuant to Ariz. R.Crim. P. 26.5, despite having previously deemed it necessary to move for the appointment of a mental health expert pursuant to Ariz. R.Crim. P. 11 to explore Correll's competency to stand trial.

Correll produced evidence indicating a history of mental illness. He proffered the affidavit of Susan Curry, a probation officer who swore that Correll previously had been committed to Gateways Hospital and Mental Health Center, a mental hospital. Correll also presented a report of a detailed psychological examination that the California Department of Corrections had performed in 1978. This report confirmed Correll's three-month commitment at Gateways Hospital and Mental Health Center and further noted that "Correll ha[d] a lengthy mental health history dating from his early teen years," and diagnosed Correll as suffering from a severe immature personality disorder.

In addition to requesting an evidentiary hearing on his ineffectiveness claim in several of the supplements to his initial Rule 32 petition, Correll moved the court to appoint and order compensation for a mental health expert to assess Correll's psychiatric condition and for an investigator to assist in locating persons and records. In response, Judge Howe denied Correll's motions for the appointment of a mental health expert and an investigator, asserting that "[t]he mental health materials petitioner describes in his present pleadings were dated and superseded by contemporaneous Rule 11 proceedings." Judge Howe further ruled that Correll's claim of ineffective assistance of counsel was not colorable and summarily dismissed Correll's petition for post-conviction relief, denying Correll's repeated request for an evidentiary hearing.

Although denial of a state evidentiary hearing after proper presentation of a colorable claim would be sufficient to fulfill the "cause" requirement of *Tamayo–Reyes*, Correll's diligent. pursuit of his claim in state court demonstrates he "tried and failed through no fault of his own to develop the facts relevant to his ineffective assistance claim at the state-court level in the only permissible manner." *Jones*, 114 F.3d at 1012–13. Indeed, the actions of the state court divested Correll of any meaningful opportunity to present this evidence at the state level.

Accordingly, the state cannot now insist the obstacle it placed in Correll's path when he sought a state-court hearing and the means to present evidence at that hearing should again prevent Correll from securing a federal evidentiary hearing. *See Jones*, 114 F.3d at 1012–13 (finding that petitioner established cause for failure to develop facts on ineffectiveness claim at state level, because state court dismissed his personal restraint petition containing ineffectiveness claim without a hearing).

Because it is coextensive with the prejudice prong of *Strickland*, the *Tamayo–Reyes* prejudice requirement has also been satisfied in this case.

## C.

At oral argument, the state contended that *Tamayo–Reyes* requires habeas petitioners seeking a federal evidentiary hearing to make a threshold showing of exhaustion before the "cause and prejudice" test could

be employed.[2] There is no support for this misguided theory in *Tamayo–Reyes*, nor in any case cited by the state.[3] Under the state's hypothesis, petitioners would be absolutely barred from seeking a federal evidentiary hearing if the material facts had not been developed in state court. Under this theory, of course, the petitioners would always lose because the *Tamayo–Reyes* rule presumes a failure to develop facts fully in state court. Indeed, the "cause" prong of *Tamayo–Reyes* requires the petitioner to provide an adequate reason why the material facts were not developed in state court. The state's reasoning is not only directly contrary to *Tamayo–Reyes*, but to common sense as well. Exhaustion requirements are founded on appropriate concerns of federalism and comity; they are not concocted simply to lead petitioners into a federal habeas cul-de-sac.

Continuing this argument, the state also contends that to show exhaustion petitioners must demonstrate that they had presented *all* the evidence in state court that they sought to present in federal court. Obviously, this interpretation would render the *Tamayo–Reyes* cause and prejudice rule entirely superfluous. Again, the state's logic is circular. It would serve no purpose to require the petitioner to explain a failure to develop material facts in state court if he or she were procedurally barred for failure to develop material facts. In claiming that the prerequisite to the cause and prejudice rule is the full development of facts in state court proceedings, the state turns the *Tamayo–Reyes* decision on its head.[4] Thus, we reject this eversion of *Tamayo–Reyes*.

2. This purported requirement differs from and would be in addition to the traditional requirement that a federal habeas petitioner must have exhausted his state remedies as to the particular claim he or she is asserting. *See* 28 U.S.C. § 2254(b) (1995). The state seeks to transform the claim exhaustion requirement into a new requirement for complete presentation of evidence. However, "claim exhaustion" does not equate to "evidence exhaustion," the standards for which were established in *Tamayo–Reyes* and its progeny.

3. The state cites *Wright v. Gramley*, 125 F.3d 1038 (7th Cir.1997) and *Livingston v. Johnson*, 107 F.3d 297 (5th Cir.1997). However, neither case mentions, much less embraces, an additional threshold exhaustion requirement. To the

contrary, both cases employ the traditional *Tamayo–Reyes* cause and prejudice analysis. Neither court dismissed the appeal for failure to exhaust state remedies. In supplemental submissions, the state claims support from *Mitchell v. Rees*, 114 F.3d 571 (6th Cir.1997) and *Schneider v. Delo*, 85 F.3d 335 (8th Cir.1996). Both *Mitchell* and *Schneider* support the traditional *Tamayo–Reyes* cause and prejudice test as we have articulated here. Neither contain any support for a modification of *Tamayo–Reyes* to include an additional threshold exhaustion requirement.

4. For support, the state again turns to *Wright* and *Livingston*. However, once again, neither case offers any comfort. Both cases involve questions of whether the petitioner sufficiently

### D.

In sum, we hold that Correll is not entitled to an evidentiary hearing on his attorney's purported guilt-phase ineffectiveness. However, Correll is entitled to an evidentiary hearing on the issue of his attorney's alleged ineffectiveness at the sentencing phase of his trial. Because he will receive an evidentiary hearing, Correll's appeal of the district court's denial of his request to expand the record is moot. Our decision also makes it unnecessary to decide whether the district court erred in rejecting Correll's funding request for experts and investigatory expenses as premature.

### III.

■ Correll argues that his death sentence violated his due process rights because of the *ex parte* conversation between Judge Howe and Dr. Garcia–Bunuel. *See Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (finding that petitioner was denied due process when death sentence was imposed on basis of information which was not fully disclosed to defense counsel). According to Correll, this informal communication could have contributed to the judge's ultimate conclusion that Correll's psychiatric status did not yield any mitigating factors. As such, this conversation could have influ-

enced Judge Howe's decision to sentence Correll to death. We disagree.

■ Correll failed to assert his *Gardner* due process claim in any state court proceeding, whether as an element of his direct appeal [5] or as a basis for post-conviction relief. Accordingly, this claim was procedurally defaulted in state court. Thus, we need not address the merits of his claim on habeas unless he establishes cause for his failure and actual prejudice. *See Pope v. Zenon*, 69 F.3d 1018, 1026 (9th Cir.1995).[6] In this case, Correll has not made the requisite showing.

■ First, Correll has not borne his burden of demonstrating actual prejudice. To fulfill this burden, he must establish "not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). This Correll cannot do. As we have already discussed, a cornerstone of Correll's claim of ineffective assistance of counsel at sentencing is his attorney's failure to proffer significant psychiatric evidence. Because Judge Howe received no evidence of Correll's psychiatric state as a mitigating factor, there was no

showed "cause" under *Tamayo–Reyes* for his failure to present evidence available to him during the state court proceedings. Thus, neither *Wright* nor *Livingston* add any additional requirements to the *Tamayo–Reyes* cause and prejudice test. In neither case did the court dismiss for failure to exhaust. On the contrary, the *Wright* and *Livingston* courts applied *Tamayo–Reyes* and determined the petitioner had not demonstrated cause. In fact, the *Wright* court remanded the case to the district court so that the petitioner could have the opportunity to establish cause. *Wright*, 125 F.3d at 1043.

5. Correll contends that the Arizona Supreme Court addressed his *Gardner* claim, citing *State v. Correll*, 148 Ariz. 468, 715 P.2d 721, 729 (1986). However, after carefully reviewing the Supreme Court's opinion in its entirety, we are unable to find any reference to Correll's *Gardner* claim.

6. We distinguish Correll's situation from a failure to exhaust state remedies, which would compel us to dismiss Correll's habeas petition as unexhausted if he had a currently available state

remedy at the time of the federal petition. *See Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982). When Correll filed his habeas petition on September 15, 1987, he had no recourse in state court for his *Gardner* due process claim. He could no longer seek direct review in the Arizona Supreme Court, because the deadline for filing a motion for reconsideration of the court's decision affirming his convictions and sentence, February 15, 1986, had long passed. Nor could he obtain review through state collateral relief: the July 23, 1987 deadline for filing a motion for reconsideration of the Arizona Supreme Court's decision affirming the trial court's denial of rehearing of its decision to dismiss Correll's petition for post-conviction relief had also passed. *See* Ariz. R.Crim. P. 31.18(b) ("Any party desiring reconsideration of a decision of an appellate court may file a motion for reconsideration in the appellate court within fifteen days after the filing of a decision by the appellate court."). Consequently, we find that Correll's *Gardner* claim has been exhausted, *see Harmon v. Ryan*, 959 F.2d 1457, 1460 (9th Cir.1992).

basis for leniency against which the *ex parte* communication—which purported to show that Correll suffered from no mental impairments—could have weighed. Thus, we can find no evidence that the *Gardner* error, if any, prejudiced Correll by working to his "actual and substantial disadvantage."

, By contrast, in *Gardner,* the sentencing judge relied on a presentence investigation report which was not fully disclosed to defense counsel, and the judge did not state on the record any information about the confidential portion of the presentence report. Accordingly, there was no opportunity for the defense attorney to challenge the accuracy or materiality of the information. *Gardner,* 430 U.S. at 353–56, 97 S.Ct. at 1202–04. In *McKenzie v. McCormick,* 27 F.3d 1415 (9th Cir.1994), we interpreted *Gardner* as conditioning a finding of constitutional error on two factors: the relevance of the *ex parte* communication to sentencing and the reliance the judge placed on the communication in making a sentencing decision. Here, Judge Howe specifically did not consider the communication in weighing aggravating and mitigating factors, as we have already explained. Nor does the mere fact of communication between Judge Howe and Dr. Garcia–Bunuel in itself "overcome the presumption of constitutional correctness accorded final state judgments of conviction and sentence." *McKenzie,* 27 F.3d at 1420.

Second, Correll has not demonstrated the existence of "some objective factor external to the defense [which] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). After the trial court had imposed Correll's death sentence, he had all the necessary information to pursue a claim under *Gardner.* The mere ignorance or inadvertence of Correll's counsel does not furnish sufficient cause to excuse a procedural default. *See Murray,* 477 U.S. at 486–87, 106 S.Ct. at 2644–45. While ineffective assistance of counsel may constitute cause, *see id.* at 488, 106 S.Ct. at 2645–46, we find that the circumstances of Correll's representation do not sink to the level of ineffectiveness under *Strickland v. Washington,* 466 U.S. 668, 694,

104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) (holding that to establish ineffective assistance, petitioner must show reasonable probability that but for counsel's errors, result of proceeding would have been different). As our analysis of the prejudice prong of the cause and prejudice test shows, Correll cannot make the requisite showing that his sentence would have been different absent the *Gardner* error, if any.

Because Correll has not shown sufficient cause for his failure to assert the *Gardner* claim in state court nor established actual prejudice, his claim does not warrant federal habeas review. We affirm the district court's grant of summary judgment on this issue.

## IV.

■ Correll's third claim of error centers upon testimony at trial that he had possessed marijuana at the time of his arrest. Correll argues that mentioning the marijuana severely compromised his misidentification defense, because Guy Snelling had testified that marijuana was stolen from his apartment on the night of the murders. Therefore, according to Correll, he suffered a violation of his due process rights.

The factual background of Correll's claim involves testimony by Butch Johnson, a Maricopa County detective, concerning property that the police had taken from Correll at the time of his arrest. On direct examination, Johnson testified that the property had included two ziplock plastic bags of marijuana. Correll's counsel immediately requested a sidebar conference, at which he moved for a mistrial. Judge Howe ultimately denied this motion, finding that Johnson's mention of marijuana had not prejudiced Correll.

Evaluated against this factual backdrop, Correll's claim of due process violation is unavailing for two reasons. First, to the extent Johnson's testimony about Correll's possession of marijuana linked Correll to Snelling's mobile home, this evidence proved essential elements of the prosecution's case— namely, Correll's opportunity to commit the crimes charged and his identity as the true culprit. *See Estelle v. McGuire,* 502 U.S. 62, 68–70, 112 S.Ct. 475, 480–81, 116 L.Ed.2d 385

(1991). As such, this evidence is admissible under Rule 404(b) of the Arizona Rules of Evidence, which regards "evidence of other crimes, wrongs, or acts" as admissible for purposes apart from proving a defendant's character, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Furthermore, even if the evidence of Correll's marijuana possession had no bearing on any element of the prosecution's case against him, its admission did not create a due process violation by rendering his trial "fundamentally unfair." *See McKinney v. Rees,* 993 F.2d 1378, 1380 (9th Cir.1993). In contrast with the prosecution in *McKinney,* which engaged in extensive questioning, occupying over sixty transcript pages, regarding the defendant's fascination with knives and his commando lifestyle, the prosecution here elicited just one mention of Correll's marijuana possession, and that testimony was "relatively sterile," *id.* at 1385. In addition, the properly admitted evidence of Correll's guilt was substantial: the identification of an eyewitness; the boot prints that Correll had left at the crime scenes; his known use of the alias "Rick" and association with Nabors; and the phone call to Michael Correll that Terry Correll had placed at the direction of the police. Given this evidence, coupled with the brutality of the homicides, it was highly improbable that the error, if any, "had substantial and injurious effect or influence in determining the jury's verdict," *id.,* and decline to grant Correll's writ of habeas corpus on this ground.

## V.

In his fourth and final claim of error, Correll attacks the Arizona Supreme Court's decision affirming his death sentence as violating his Eighth Amendment rights. Correll argues that the Arizona Supreme Court failed to cure the trial court's unconstitutional application of the death sentence, because it offered no principled explanation of the reweighing process it pursued after invalidating one of the aggravating factors supporting Correll's death sentence. Accordingly, Correll contends that his death sentence is invalid. We disagree.

### A.

 Correll's claim is procedurally barred under the independent and adequate state ground doctrine, which prohibits federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). Such a prohibition applies here. In denying Correll's Rule 32 petition for post-conviction relief, the Arizona trial court found that Correll had raised no colorable issues relating to ineffective assistance of counsel, and ruled that Correll's remaining claims—including, presumably, his claim of Supreme Court Eighth Amendment violations—were precluded or waived, citing two Arizona statutes.[7] By invoking state-law procedural grounds for its dismissal of these latter claims, the state trial court barred later federal review of these claims on the merits. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2593–94, 115 L.Ed.2d 706 (1991). The unexplained order that the Arizona Supreme Court subsequently issued, denying review of the trial court's denial of Correll's motion for rehearing, is presumed to rest upon the same state-law procedural basis. *Id.* at 803, 111 S.Ct. at 2594 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

 To overcome the resulting procedural default, Correll must establish cause for

---

7. While one of the statutes Judge Howe cited has since been repealed, the other statute, Ariz.Rev. Stat. § 13–4232, continues in force, and reads in relevant part:

 A. A defendant is precluded from relief under this article based on any ground:

 1. Still raisable on direct appeal or on a post-trial motion.

 2. Finally adjudicated on the merits on appeal or in any previous collateral proceeding.

 3. That was waived at trial, on appeal or in any previous collateral proceeding.

*See* Ariz.Rev.Stat. § 13–4232(A). Hence, this subsection continues to provide sufficient state procedural support for Judge Howe's ruling.

the default and actual prejudice as a result of the alleged violation of his Eighth Amendment rights. *See Pope,* 69 F.3d at 1026. Correll has failed to do so. He has proffered no "objective factor external to the defense," *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645, that prevented him or his attorney from filing a motion for reconsideration of the Arizona Supreme Court's decision, an avenue of relief that the Arizona Rules of Criminal Procedure clearly outline. *See* Ariz. R.Crim. P. 31.18(b) ("Any party desiring reconsideration of a decision of an appellate court may file a motion for reconsideration in the appellate court within fifteen days after the filing of a decision by the appellate court."). Nor can Correll demonstrate that the Arizona Supreme Court's reweighing analysis actually prejudiced him. While invalidating one of the aggravating factors supporting his death sentence, the Supreme Court affirmed the trial court's finding of three other aggravating factors, as well as the trial court's conclusion that no mitigating factors existed. Thus, even absent the invalid "other homicides" circumstance, the Supreme Court had ample grounds for affirming Correll's death sentence.

■ Correll argues that we may properly reach the merits of his Eighth Amendment claim because there is no independent and adequate state ground for Judge Howe's "generic and conclusory" ruling of preclusion and waiver. The independent and adequate state ground doctrine prohibits federal courts from addressing state prisoners' habeas claims when a state court has relied upon a state-law procedural default in declining to reach the merits of the federal claims. However, Correll misapprehends both the scope of this doctrine and Judge Howe's ruling. As we have previously noted, the presumption that no independent and adequate state-law basis exists for a state-court judgment "is to be applied only after it has been determined that the relevant state court decision fairly appears to rest primarily on federal law or is interwoven with federal law." *Thomas v. Lewis,* 945 F.2d 1119, 1122 (9th Cir.1991). In the context of this determination, "[w]hether there is a plain statement from the state court is not the first or most significant inquiry." *Id.* There is no intima-

tion in Judge Howe's order that he based his ruling of preclusion and waiver on federal grounds. On the contrary, his order states expressly, albeit tersely, that this ruling arose from two provisions of Arizona statutory law. Nor can Correll claim that the subsequent repeal of one of the cited statutes, Ariz.Rev.Stat. § 13–4240, leaves Judge Howe's order without any state procedural support: the other statute Judge Howe cited, Ariz.Rev.Stat. § 13–4232, continues in force and provides a state-law basis for Judge Howe's finding of preclusion and waiver. Thus, we reject Correll's contention that this claim is not procedurally defaulted.

## B.

■ Even if we ignore Correll's procedural default, he cannot prevail on the merits of his Eighth Amendment claim. Characterizing the language the Arizona Supreme Court used in its reweighing analysis as "conclusory," Correll argues that the court violated his Eighth Amendment rights under *Jeffers v. Lewis,* 38 F.3d 411 (9th Cir.1994), and *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). Contrary to Correll's contention, we find no constitutional error in the Arizona Supreme Court's approach.

■ In a "weighing" state such as Arizona, when a trial court decides to impose a death sentence on the basis of both valid and invalid aggravating factors—as Judge Howe did here—a state appellate court can cure the error in either of two ways: "performing a harmless-error review, or reweighing the mitigating evidence against the remaining valid aggravating factors." *Jeffers,* 38 F.3d at 414. As Correll himself concedes, however, the United States Supreme Court "has never specified the degree of clarity with which a state appellate court must reweigh in order to cure an otherwise invalid death sentence," *id.* In other words, the Supreme Court has not translated its call in *Stringer* for "close appellate scrutiny of the import and effect of invalid aggravating factors," *Stringer,* 503 U.S. at 230, 112 S.Ct. at 1136, into a concrete set of requirements for a reweighing analysis that passes constitu-

tional muster. Rather, the Court has merely noted that a state appellate court may not simply authorize a death sentence as long as at least one valid aggravating circumstance remains, *see Clemons v. Mississippi*, 494 U.S. 738, 751–52, 110 S.Ct. 1441, 1449–50, 108 L.Ed.2d 725 (1990).[8] Therefore, in the absence of clear guidelines from the United States Supreme Court, we measure the Arizona Supreme Court's reweighing analysis in the instant case against the analysis that we previously approved as constitutionally sound in *Jeffers*, armed with the presumption of this circuit that "state courts follow the law, even when they fail to so indicate," *Jeffers*, 38 F.3d at 415. Because we find that the two analyses are structurally and substantively identical, we reject Correll's claim of Eighth Amendment error.

In addition to stating that it was independently reweighing the remaining valid aggravating factor against the mitigating circumstances, the Arizona Supreme Court "provided a principled explanation of what it did," pursuant to *Jeffers*. *See Jeffers*, 38 F.3d at 415. This "principled explanation" comprised the following elements: the acknowledgment of the obligation to undertake an independent review of the record to consider aggravating and mitigating circumstances, and to determine whether the latter outweighed the former; the analysis of the evidence before the trial court to evaluate the existence of aggravating and mitigating factors; the assessment of mitigating evidence, leading to the conclusion that there was no substantial evidence supporting mitigation; and the conclusion that careful review had found that the mitigating factors did not outweigh the mitigating circumstances. *Id.* Similarly, in *State v. Correll*, 148 Ariz. 468, 715 P.2d 721 (1986), the Arizona Supreme Court began its reweighing analysis by noting its duty to "independently review the record to determine the presence or absence of both aggravating and mitigat-

ing circumstances," *id.* 715 P.2d at 731. The court then conducted a detailed evaluation of the evidence the trial court had considered to determine whether aggravating or mitigating circumstances existed. As a consequence, the court found that none of the mitigating factors Correll had proposed, whether considered alone or in combination, were "sufficiently substantial to call for leniency," *id.* at 734. After carefully assessing each potential mitigating factor, the court concluded: "We have found three aggravating circumstances of A.R.S. § 13–703(F)(2), (5), and (6). We have also considered the mitigating circumstances offered by defendant, and we conclude that even in combination the mitigating circumstances are not sufficiently substantial to call for leniency," *id.* at 735–36. Like the other facets of the *Correll* court's analysis, this conclusion is virtually indistinguishable from the conclusion that we approved in *Jeffers*: "We have carefully reviewed the record to determine whether the factors in mitigation outweigh the aggravating circumstances, and we find they do not." *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105, 1132–33 (1983). To attack the Arizona Supreme Court's analysis as unconstitutionally "conclusory," as does Correll, ignores established precedent. Hence, on both procedural and substantive grounds, we affirm the district court's dismissal of Correll's Eighth Amendment claim.

### C.

▬ As a corollary to his main Eighth Amendment claim, Correll further asserts that the Supreme Court's reduction of one death sentence to a sentence of life imprisonment eviscerates the factual basis for the trial court's finding of aggravating factors. To the extent that this claim is subsumed in Correll's main Eighth Amendment claim, the former, like the latter, is procedurally defaulted, for the reasons that we have already

---

8. Correll urges us to follow Justice O'Connor's concurrence in *Sochor v. Florida*, 504 U.S. 527, 541, 112 S.Ct. 2114, 2123–24, 119 L.Ed.2d 326 (1992), which declares that "[a]n appellate court's bald assertion that an error of constitutional dimensions was 'harmless' cannot substitute for a principled explanation of how the court reached that conclusion." While we

agree with this proposition, Correll's reliance on it is misplaced: by its own terms, Justice O'Connor's prescription was limited to harmless error analysis. In any event, as we discuss *infra*, the Arizona Supreme Court did offer a principled explanation of its decision affirming Correll's sentence.

articulated. To the extent that this claim lies outside his main Eighth Amendment claim, Correll did not raise the former claim in his Rule 32 state post-conviction petition, thereby procedurally defaulting it essentially as he did his *Gardner* claim, *see supra* Part III.

 Nor are the merits of this claim strong. A state court's finding of aggravating circumstances is arbitrary and capricious in violation of the Eighth Amendment if and only if no rational factfinder could have reached the same conclusion. *See Lewis v. Jeffers,* 497 U.S. 764, 782–83, 110 S.Ct. 3092, 3103–04, 111 L.Ed.2d 606 (1990). Correll's arguments notwithstanding, the Arizona Supreme Court's findings do not defy rationality here. Although the Arizona Supreme Court did find that Correll did not intend to cause Debra Rosen's death, this finding does not detract from its conclusions regarding aggravating factors. First, a rational factfinder certainly could have concluded that Correll was involved in the murders to eliminate witnesses to the robbery and with the expectation of pecuniary gain. This is sufficient to satisfy the *Lewis* standard, however reasonable Correll's alternative explanation of his motivation—to eliminate witnesses to the murder of Debra Rosen—may be.

Second, Correll mischaracterizes the Arizona Supreme Court's determination that he committed the murders "in a cruel, heinous, and depraved manner" as resting largely on the strangling homicide of Rosen, which he did not intend. On the contrary, the court's assessment of this aggravating factor did not rely upon the uniquely painful and distressing features of Rosen's murder. Instead, the court emphasized the fear and apprehension that Snelling, Cady, and D'Brito must have experienced as they awaited their ultimate fate, as well as the depravity manifested in the senselessness of the murders, the helplessness of the victims, and Correll's cold-blooded disregard for human life. *See Correll,* 715 P.2d at 732–34. Quite apart from the *Lewis* standard, therefore, no invalid considerations underlay the Arizona Supreme Court's evaluation of the "cruel, heinous, and depraved" aggravating factor. Under *Lewis,* moreover, a rational factfinder could have reached the same conclusion as the Arizona Supreme Court, based on the evidence of cruelty, heinousness, and depravity the court expressly considered. Thus, we decline to disturb the Arizona Supreme Court's decision affirming Correll's death sentence on this ground.

## VI.

We reverse the district court's decision and remand to permit Correll to present his claim of ineffective assistance of counsel at sentencing at an evidentiary hearing. In all other respects, we affirm the district court's grant of summary judgment.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.