**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARLON DEWAYNE WILLIAMS,
Petitioner-Appellant,

v.

No. 98-28

RONALD ANGELONE, Director,
Virginia Department of Corrections,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-97-769-3)

Argued: March 1, 1999

Decided: April 28, 1999

Before WILKINS and TRAXLER, Circuit Judges, and
FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Traxler and Judge Faber joined.

_____

**COUNSEL**

**ARGUED:** Gerald Thomas Zerkin, GERALD T. ZERKIN & ASSO-
CIATES, Richmond, Virginia, for Appellant. Katherine P. Baldwin,
Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Melanie A.

Moore, GERALD T. ZERKIN & ASSOCIATES, Richmond, Virginia; Robert E. Lee, Jr., VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Richmond, Virginia, for Appellant. Mark J. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Marlon DeWayne Williams appeals an order of the district court denying his petition for a writ of habeas corpus, **1** which challenged his Virginia conviction and death sentence for the murder-for-hire of Helen Bedsole. See 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998).**2** Finding no error, we affirm.

_____

**1** Williams named Ronald Angelone, Director of the Virginia Department of Corrections, as Respondent in his petition. For ease of reference, we will refer to Angelone as "the Commonwealth" throughout this opinion.

**2** Because Williams' petition for a writ of habeas corpus was filed on March 12, 1998, after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, amendments to 28 U.S.C.A. § 2254 effected by § 104 of the AEDPA govern our resolution of this appeal. See Green v. French, 143 F.3d 865, 868 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). Although Williams' state habeas petition was filed and decided after July 1, 1992--the date that Virginia purports to have satisfied the opt-in provisions--the Commonwealth does not argue that the provisions of § 107 of the AEDPA (including the more stringent procedural default provisions) apply. See Bennett v. Angelone, 92 F.3d 1336, 1342 (4th Cir. 1996) (observing that Virginia purports to have satisfied the opt-in provisions of § 107 as of July 1, 1992).

2

I.

On November 9, 1993, Williams killed Bedsole by shooting her twice in the head at close range. He was paid $4,000 for the murder by Bedsole's husband, to whom Williams previously had sold cocaine. Williams subsequently pled guilty to capital murder.

The Commonwealth sought the death penalty on the basis that Williams posed a future danger to society. <u>See</u> Va. Code Ann. § 19.2-264.2(1) (Michie 1995). During a sentencing hearing before a trial judge, prosecutors introduced evidence of Williams' violent relationship with Tanesha Alston, a former girlfriend. Alston testified that Williams initially was good to her and that she began living with him in 1992. In 1993, however, Williams began to abuse Alston physically. On one occasion, Williams pulled her from her automobile and beat her until she lost consciousness and required hospitalization. Other testimony established that shortly after this vicious attack, Williams told a friend that he intended to murder members of Alston's family with the hope that Alston would become so distraught that she would commit suicide. Although he did not carry out this plan, Williams did break into the home of Alston's grandmother and attempt to murder her by smothering her with a pillow and cutting her throat with a knife.

In mitigation, Williams presented evidence of his troubled upbringing. Williams' aunt, Jean Brooks, testified that Williams' mother left him in Brooks' care at a very early age but abruptly reappeared and took custody of Williams when he was five. Brooks stated that she became aware that Williams was being abused by his stepfather at a family reunion when Williams was ten years old and that she agreed to take custody of Williams several years later after social services removed him from his mother's home. This arrangement was short-lived, however, and Williams returned to his mother, after which Brooks had only limited contact with him.

Some details of the abuse Williams suffered as a child were developed through the testimony of Kim Johnston, the probation officer who prepared Williams' presentence report. Johnston testified that her investigation revealed that Williams had been severely abused by his mother and stepfather throughout his childhood, requiring the inter-

3

vention of various social service agencies. Johnston also recounted Williams' history of hospitalization for mental and emotional disturbances and authenticated hospital records, which were then admitted into evidence.

After carefully considering all of the evidence, the trial judge elected to impose the death penalty. Williams challenged his sentence in the Supreme Court of Virginia, arguing that the sentence was excessive and disproportionate to the sentences imposed in similar cases. The Supreme Court of Virginia affirmed, and the Supreme Court denied certiorari. See Williams v. Commonwealth, 472 S.E.2d 50, 54 (Va.), cert. denied, 117 S. Ct. 493 (1996). Williams subsequently filed a petition for habeas corpus relief in the Supreme Court of Virginia, see Va. Code Ann. § 8.01-654(C)(1) (Michie Supp. 1998), raising numerous issues. As pertinent here, Williams alleged that trial counsel were ineffective in two respects. First, Williams claimed that counsel failed to develop additional mitigating evidence concerning the abuse he suffered as a child. Second, Williams maintained that counsel failed to obtain expert psychological testimony and to explain to him the importance of such testimony. Williams also claimed that he was denied the assistance of appellate counsel by his attorneys' failure either to file an appeal or to comply with the requirements of Anders v. California, 386 U.S. 738 (1967). Williams moved for the appointment of a psychological expert.

In support of its opposition to Williams' habeas petition, the Commonwealth submitted an affidavit prepared by one of Williams' trial attorneys, David Bouchard. Bouchard stated that prior to Williams' trial, counsel had obtained the appointment of a clinical psychologist, Dr. Weare Zwemer, to evaluate Williams in order to develop mitigation evidence for sentencing. Williams refused to cooperate with Dr. Zwemer, stating that he did not want the sentencing proceeding to become "a freak show." J.A. 223 (internal quotation marks omitted). Nevertheless, Dr. Zwemer reviewed Williams' records and observed Williams in conference with his attorneys. Based on this information, Dr. Zwemer informed Williams' counsel that, if asked to speculate, he would diagnose Williams with antisocial personality disorder. Dr. Zwemer further informed counsel that he would testify that this disorder is not generally amenable to treatment and that he would be unable to "provide ... reassurance regarding the defendant's future

dangerousness." J.A. 233. Because of its aggravating nature, counsel elected not to submit Dr. Zwemer's report into evidence or call him to testify.

The Supreme Court of Virginia dismissed the petition without directing that an evidentiary hearing be held and denied Williams' motion for the appointment of an expert. The Supreme Court again denied certiorari. See Williams v. Angelone, 118 S. Ct. 454 (1997). Thereafter, Williams moved the district court for the appointment of an expert to assist in the preparation of a federal habeas corpus petition. The district court initially granted the motion but subsequently vacated the order. During the time that the order was effective, however, Williams was evaluated by Dr. Leigh Hagan. Dr. Hagan later submitted an affidavit stating that Williams suffered from attachment disorder. Dr. Hagan further opined that attachment disorder might respond to treatment and that Williams likely would adapt well to a structured prison environment.

Williams then filed a petition for a writ of habeas corpus in district court and requested an evidentiary hearing. In support of his claim that trial counsel were ineffective for failing to obtain expert psychological testimony in mitigation, Williams submitted Dr. Hagan's affidavit and his own. Williams asserted in his affidavit that his attorneys failed to explain adequately the purpose of expert mitigation testimony; according to Williams, he "thought the point was to have [Dr. Zwemer] say that [he] was insane." J.A. 240. Williams further claimed that if he had understood the true purpose of the examination, he would have cooperated. The district court refused Williams' request for an evidentiary hearing, dismissed the petition, and granted Williams' application for a certificate of appealability.

II.

Williams first claims that trial counsel were ineffective for failing to obtain a mitigating diagnosis from a psychological expert. More specifically, Williams argues that counsel should have recognized that Dr. Zwemer's tentative diagnosis of antisocial personality disorder was incorrect and that a proper evaluation would lead to a correct diagnosis of attachment disorder. He further claims that had counsel adequately explained to him the need for expert mitigating testimony,

5

he would have allowed himself to be evaluated. The district court concluded that this claim was defaulted because it had not previously been presented to the Supreme Court of Virginia and would be procedurally barred from consideration on the merits if presented in the future. See Gray v. Netherland, 518 U.S. 152, 161-62 (1996). Nevertheless, the court considered and denied Williams' request for an evidentiary hearing on the claim, reasoning that Williams could not satisfy the requirements of 28 U.S.C.A. § 2254(e)(2). Williams now challenges the ruling holding his claim to be defaulted and the denial of his request for an evidentiary hearing.

We conclude that the district court incorrectly determined that Williams failed to present to the Supreme Court of Virginia his claim that trial counsel were ineffective for failing to obtain a mitigating diagnosis from a psychological expert. Williams' state habeas petition alleged that "[c]ounsel failed adequately to explain the role of the expert in the presentation of mitigating evidence to Williams, failed to utilize an expert in the development of a theory of mitigation and mitigation investigation, and failed to present expert testimony to underscore a theory of mitigation." J.A. 145. These assertions are sufficient to constitute a fair presentation of the claim. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) (explaining that a claim is exhausted when its substance is fairly presented to the highest state court).

We do find, however, that the district court correctly concluded that Williams was not entitled to an evidentiary hearing. Section 2254(e)(2) limits the authority of a federal district court to grant an evidentiary hearing to a habeas petitioner who has failed to develop the factual basis supporting a claim in state court. Such a petitioner must demonstrate that

> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2). If the petitioner makes this initial showing, the district court must then consider whether a hearing is "proper or necessary." Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir.), cert. denied, 119 S. Ct. 587 (1998).

Williams contends that he did not fail to develop the factual basis for his claim in state court because his requests for expert assistance and an evidentiary hearing were denied; therefore,§ 2254(e)(2) does not apply. See id. at 337-38. Assuming that he is correct, Williams nevertheless is not entitled to an evidentiary hearing. In order to establish his right to an evidentiary hearing, Williams must "allege[ ] additional facts that, if true, would entitle him to relief." Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996). And, because Williams did not present evidence supporting his allegations in state court, an evidentiary hearing is not permitted unless he can show cause and prejudice or a fundamental miscarriage of justice to excuse this shortcoming. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992).

Williams can demonstrate neither cause nor prejudice.[3] Williams cannot establish cause because his ineffective assistance of counsel claim rests in part on his allegation that counsel failed to explain the need for a psychiatric evaluation, but nothing prevented him from submitting his affidavit setting forth his assertion that counsel failed to so inform him to the state habeas court.[4] Further, even if Williams

_____

[3] Williams does not contend that his attorneys' ineffectiveness resulted in a fundamental miscarriage of justice, i.e. , that he was sentenced to death even though he is actually innocent of the death penalty. See Sawyer v. Whitley, 505 U.S. 333, 344-45 (1992).

[4] At oral argument, Williams maintained that his ineffective assistance of counsel claim does not depend on the failure of counsel to explain the importance of expert mitigation testimony. Without this allegation, however, Williams' claim at best amounts to an assertion that counsel should

7

could establish cause, he could not demonstrate actual prejudice. The prejudice required under Keeney is the same as that required to demonstrate ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 694 (1984). See Correll v. Stewart, 137 F.3d 1404, 1414 (9th Cir.), cert. denied, 119 S. Ct. 450 and 119 S. Ct. 465 (1998). Accordingly, Williams must demonstrate that there is a reasonable probability--i.e., one sufficient to undermine confidence in the outcome--that the result of the proceeding would have been different. See Strickland, 466 U.S. at 694. This he cannot do. At best, Dr. Hagan's affidavit establishes that Williams suffers from attachment disorder, that this problem may improve with"treatment and passage of time," and that Williams likely will adapt to a structured prison environment. J.A. 244. Although this evidence certainly is mitigating, we conclude that there is no reasonable probability that the sentencing judge would have been moved by it to impose a life sentence. The testimony at the sentencing hearing indicated that Williams had a long history of violent behavior that included convictions for assault and malicious wounding. And, while in prison awaiting trial for the instant offense, Williams assaulted another inmate. Finally, Williams' vicious attacks on Alston (who loved Williams and attempted to be a stabilizing influence in his life) and Alston's grandmother, and his plans to murder the rest of Alston's family, further served to establish that he posed a significant danger to society. The district court therefore did not err in denying Williams' request for an evidentiary hearing.[5]

_____

have obtained another expert after Dr. Zwemer rendered an unfavorable opinion. Such a claim would fail because we have held that the Constitution does not require attorneys to "shop around" for more favorable expert testimony. Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir. 1992).

[5] Williams also maintains that the district court erred in refusing to grant an evidentiary hearing on his more general claim that counsel were ineffective for failing to present additional mitigating evidence regarding the abuse and abandonment he suffered as a child and the mental illness that resulted. Because Williams' claim is without merit, no evidentiary hearing was required. See Cardwell, 152 F.3d at 338.

In order to succeed on his claim that counsel were ineffective, Williams must establish that his attorneys' "representation fell below an

III.

Next, Williams contends that his due process rights were violated when his attorneys, instead of briefing any issues on appeal, submitted argument concerning only factors that the Supreme Court of Virginia was required to consider as part of its mandatory review of Williams' sentence. Williams contends that this failure violates Anders v. California, 386 U.S. 738 (1967).

Anders outlines the circumstances under which an appellate court may grant appointed counsel's motion to withdraw from representation of a defendant who desires to appeal when counsel believes an appeal would be frivolous. The following requirements must be met: Counsel, having determined that an appeal would be frivolous, must submit to his client and the court a brief addressing all issues that arguably might give rise to an appeal; the defendant must be given an opportunity to raise any issues of his choosing; and the court must determine, after a full review of the record, that an appeal would be wholly frivolous. See id. at 744. The Anders brief serves the twin functions of "provid[ing] the appellate courts with a basis for deter-

_____

objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. Here, even if Williams' attorneys were deficient for failing to present additional evidence of the abuse suffered by Williams and his resulting psychological problems, there is no prejudice. Although evidence that a defendant suffers from a mental impairment or has a history of being abused as a child may diminish his blameworthiness for his crime, this evidence is a double-edged sword that a sentencer could well find to be aggravating rather than mitigating. See Howard v. Moore, 131 F.3d 399, 421 (4th Cir. 1997) (en banc), cert. denied, 119 S. Ct. 108 (1998); Nobles v. Johnson, 127 F.3d 409, 423 (5th Cir. 1997) (observing that evidence of "childhood abuse and emotional problems," while potentially mitigating, also "could have strengthened the prosecution's argument that [the defendant] posed a continuing threat to society"), cert. denied, 118 S. Ct. 1845 (1998). Therefore, we cannot conclude that a reasonable probability exists that the sentencing judge, presented with additional evidence of the abuse and abandonment suffered by Williams as a child, would have declined to impose the death penalty.

9

mining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability" and aiding the courts "in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." McCoy v. Court of App., 486 U.S. 429, 439 (1988). Here, Williams' counsel did not move to withdraw, but in fact submitted a brief addressing what counsel considered their strongest position; counsel also presented an oral argument on Williams' behalf. Therefore, Williams' characterization of this claim as presenting an Anders issue is incorrect, and it cannot be said that the state-court decision to deny relief on this claim was unreasonable. See 28 U.S.C.A. § 2254(d)(1).

IV.

For the reasons set forth above, we conclude that all of Williams' claims lack merit. Accordingly, we affirm the denial of habeas relief by the district court.

AFFIRMED

10