James Thomas HART, Petitioner–Appellant,

v.

James GOMEZ, Director, Department of Corrections; Theo White, Warden, Respondents–Appellees.

No. 98–15932.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1999.

Filed April 26, 1999.

As Amended June 15, 1999.

Frank G. Prantil, Sacramento, California, for the petitioner-appellant.

Bruce Ortega, Deputy Attorney General, San Francisco, California, for the respondents-appellees.

Before: KRAVITCH,[1] REINHARDT, and T.G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

James Thomas Hart appeals the district court's denial of his petition for a writ of habeas corpus. Although Hart has now completed serving his sentence, he filed his petition in January 1996 while still in prison. Because we find that Hart received ineffective assistance of counsel when his trial attorney failed to investigate and introduce evidence central to petitioner's defense, we reverse.

## I.

### BACKGROUND

In an information filed on August 29, 1990, Hart was charged with molesting his daughter, Jennifer, during their visits to the R–Ranch camping resort between September, 1986 and August, 1987.[2] At trial, the prosecution relied primarily on Jennifer's testimony. Jennifer told the jury that between September, 1986 and August, 1987, she had been molested by her father, but *only* during visits to the R–Ranch. Most significantly, Jennifer testified specifically that Hart *never* molested her during visits on which he was accompanied by another adult.

Deanne Kendall testified on behalf of the defense. She stated that during the period from September 1, 1986 to September 1, 1987, she was dating Hart and that she accompanied him every weekend he took his children, Jennifer and her younger brother, to the R–Ranch.[3] Before testifying, Kendall informed Hart's attorney that she possessed extensive and detailed records that proved the truthfulness of her contention. She told him that on the weekends she and Hart visited the R–Ranch, they would stay at a motel in Fairfield on Friday night, pick up the children on Saturday morning, and then spend the remainder of the weekend together at the ranch. She also told counsel that she kept credit card receipts from the motel visits. In addition, she had grocery receipts from Raley's in Fairfield, where she bought groceries on the way to the R–Ranch. Kendall also meticulously recorded all her visits to the ranch on her personal calendars. As Kendall reported to defense counsel before trial, these records demonstrated that she accompanied Hart to the R–Ranch each time he brought his children there between September, 1986 and September, 1987. Despite being informed by Kendall that such remarkable corroborating evidence existed, defense counsel failed to investigate its relevance, or to introduce Kendall's receipts and calendars into evidence. He simply put Kendall on the stand to tell her story without any evidentiary support. Given Jennifer's testimony that Hart never molested her when another adult accompanied Hart to the R–Ranch, the corroborative evidence in Kendall's possession would have raised substantial doubt regarding Hart's guilt of the

---

1. The Honorable Phyllis Kravitch, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, Sitting by Designation.

2. The jury was unable to reach a verdict on a count of lewd and lascivious conduct allegedly occurring during 1984 at Hart's residence.

3. Hart's counsel on appeal did not represent him at trial.

specific charges in the information. In fact, had Kendall's receipts and records been presented to the jury, it is highly doubtful that a reasonable juror could have voted to convict on those charges.[4]

Following his conviction, Hart moved for a new trial, arguing that his attorney had rendered ineffective assistance of counsel. The trial judge denied the motion and sentenced Hart to 12 years in state prison. Hart's appeal was denied by the California Court of Appeal, and the California Supreme Court, without comment, denied his petition. Hart's post-conviction efforts to obtain relief in the state courts were equally unsuccessful.

Hart filed a petition for writ of habeas corpus in United States District Court, which entered an order denying relief. In its order, the district court stated that the evidence against Hart "pointed overwhelmingly towards Hart's guilt," and therefore, that the introduction of Kendall's receipts and records would not have changed the outcome of the proceeding. Accordingly, the court found that Hart was not prejudiced by the deficient performance it assumed his counsel had rendered.

In this appeal, Hart argues that he is entitled to a writ of habeas corpus because he received ineffective assistance of counsel. He argues forcefully that he was prejudiced by defense counsel's failure to introduce the evidence corroborating Kendall's testimony. We agree, and therefore conclude that Hart's petition must be granted.

## II.

### DISCUSSION

Hart contends that he was deprived of his Sixth Amendment right to effective assistance of counsel as a result of his attorney's failure to investigate the relevance of and introduce into evidence

Kendall's receipts and records. To establish ineffective assistance of trial counsel, a petitioner must satisfy the two prongs set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a petitioner must first show that his counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. To be deficient, counsel's performance must be "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Upon establishing deficient performance, a petitioner must then show that this deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. 2052. The petitioner need not show that the deficient performance more likely than not altered the outcome of the case, but must demonstrate only a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Here, the prosecution's primary witness, Hart's daughter Jennifer, testified that during the one-year period covered by the information the molestation occurred exclusively at the R–Ranch and that she was never molested on an occasion when another adult accompanied her father to the ranch. At trial, the state introduced into evidence R–Ranch's records of Hart's visits to the ranch. Linda Hodge, the custodian of records for R–Ranch, testified on cross examination to the specific dates that Hart visited the ranch between September, 1986 and August, 1987. According to the prosecution's witness, Hart visited the ranch on 9/20/86, 11/1/86, 11/15/86, 3/14/87, 4/25/87, 5/1/87, 6/12/87, 6/26/87, and 8/15/87. Hodge's testimony was corroborated by the R–Ranch records.

---

4. Hart could not, of course, be convicted merely of "being" a child molester. *See, e.g., Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The state charged Hart with committing a series of acts during a specified period of time. It was required to prove that Hart indeed committed the crimes during the period set forth in the information. *See, e.g., United States v. Whitten*, 706 F.2d 1000, 1006 (9th Cir.1983) (citing *United States v. Rodriguez*, 546 F.2d 302 (9th Cir.1976)).

At trial, Kendall testified that she accompanied Hart every weekend he went to the R–Ranch with his children during the relevant one-year period.[5] Despite the fact that Kendall had records, including calendar entries and receipts from a motel and a grocery store near the ranch, that verified her claim that she went to the ranch on each weekend that the prosecution's independent records showed that Hart was at the ranch (except for the two weekends that Hart went without his children, see supra n. 4),[6] defense counsel let Kendall's testimony stand completely uncorroborated. According to Kendall's declaration, defense counsel spent no more than five minutes with her before the trial. During this brief meeting, Kendall informed him that she had the critical corroborating evidence in her possession. According to Kendall, he merely "glanced" at the records. When Kendall pressed him to take the records and introduce them so as to corroborate her testimony, defense counsel responded, "Who's the lawyer here, you or me?" As noted, when Kendall was called as a defense witness, she simply testified without any supporting evidence that she had been with Hart each time he took his children to R–Ranch. Defense counsel failed to investigate or introduce into evidence the records that fully corroborated Kendall's statements. Thus, the jury was left to decide, without benefit of supporting or corroborative evidence, whether Kendall's testimony was truthful and accurate, or whether it was unreliable or offered simply in an effort to assist a former lover.

 A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confi-

dence in the verdict, renders deficient performance. Kendall's evidence, if believed by the jury, would have demonstrated the truthfulness of her testimony and established that, in light of Jennifer's testimony, no molestation occurred during the time period set forth in the information—or at the least that the molestation as charged in the information had not been proved beyond a reasonable doubt. Rather than investigating the relevance of the records, and introducing them to corroborate Kendall's testimony, defense counsel totally ignored her pleas. Such conduct is "outside the wide range of professionally competent assistance." Strickland, at 690, 104 S.Ct. 2052.

When faced with similar examples of a defense counsel's failure to investigate or introduce exculpatory evidence, we have concluded that the failure constitutes deficient performance under Strickland. In Sanders v. Ratelle, 21 F.3d 1446 (9th Cir. 1994), for example, Sanders challenged his conviction for second degree murder on the ground that his trial counsel had rendered ineffective assistance of counsel. Sanders' brother told defense counsel that he, not his brother, had committed the murder. See id. at 1456. Sanders' defense counsel failed to investigate this evidence and to introduce it at trial. See id.

We concluded that both the failure to investigate the exculpatory evidence and the failure to introduce the evidence at trial constituted deficient performance. We first held that Sander's counsel had "failed to fulfill his duty to investigate [Sanders'] most important defense." Id. at 1457; see also Strickland, 466 U.S. at 691, 104 S.Ct. 2052 (holding that "counsel has a duty to make reasonable investigations or to make a reasonable decision that

5. The record reflects the fact that Hart was at the R–Ranch on two occasions between September, 1986 and August, 1987 without Kendall, namely April 25 and August 15, 1987. As Hodge's testimony and the R–Ranch records reflect, however, on neither of these occasions did Hart's children accompany him to the ranch. Rather, on both April 25 and August 15, Hart was accompanied by another

adult, but not by his children. Accordingly, under the evidence introduced by the prosecution, it is not possible that any molestation occurred on either April 25 or August 15.

6. We have conducted an independent review of Kendall's records and have determined that those records clearly and convincingly corroborate Kendall's testimony.

makes particular investigations unnecessary"); *Baylor v. Estelle*, 94 F.3d 1321 (9th Cir.1996); *United States v. Burrows*, 872 F.2d 915, 918 (9th Cir.1989); *Evans v. Lewis*, 855 F.2d 631 (9th Cir.1988) (holding that a failure to investigate possible evidence could not be deemed a trial tactic where the lawyer did not view relevant documents that were available). As in *Sanders*, Hart's defense counsel was presented with important exculpatory evidence, and like Sanders' attorney, Hart's counsel failed to conduct any investigation regarding that evidence. In short, Hart's counsel "failed to fulfill his duty to investigate [Hart's] most important defense," *Sanders*, 21 F.3d at 1457, and was, therefore, deficient.

In *Sanders*, we also found that the failure of Sanders' defense counsel to "offer into evidence [the brother's] extra-judicial admission that he was the shooter," provided a "strong basis" for concluding that counsel's performance was deficient. *See id.* at 1457–58. Our conclusion was based on two factors: (1) the evidence would constitute a strong defense to the murder charges against Sanders, and (2) "there was no .conceivable strategic or tactical reason not to use this evidence at the . . . trial." *Id.* Both factors are present in the case at bench. First, the evidence corroborating Kendall's testimony would serve to refute the charges that molestation occurred during the period charged in the information. Second, there is no reasonable strategy that could account for defense counsel's failure to introduce this corroborating evidence.[7] Defense counsel called Kendall as a witness and had her testify to the fact that she was with Hart at the ranch at all relevant periods. In doing so, he made the strategic decision to rely on the assertion that Hart was always accompanied by an adult companion when he took his children to the R–Ranch. Having chosen to pursue this line of defense, it is simply inconceivable that defense counsel's decision not to introduce documentary evidence fully *corroborating* Kendall's testimony was a strategic one.[8]

Like the testimony counsel failed to introduce in *Sanders*, the Kendall records were important to Hart's defense. Accordingly, defense counsel's failure to introduce them amounts to deficient performance under *Strickland.*

---

**7.** Indeed, the state does not claim on appeal that defense counsel's decision was a strategic one.

**8.** Our cases involving a defense counsel's failure to introduce evidence during a sentencing hearing also support the conclusion that petitioner's counsel's failure to introduce Kendall's records constitutes deficient performance. Although the case at bench involves the failure to introduce evidence at trial rather than during a sentencing hearing, the reasoning of our sentencing cases extends beyond the sentencing context. In both instances, it is the attorney's failure to introduce evidence central to his client's case that amounts to ineffective assistance. *See, e.g., Smith v. Stewart*, 140 F.3d 1263, 1269 (9th Cir.1998) (when the failure to present evidence is not based upon tactical considerations, "we have not hesitated to find deficient performance"). On several occasions, for example, we have found that defense counsel's failure to introduce mitigating evidence—by calling witnesses and presenting evidence at the sentencing phase of a capital trial—amounts to deficient performance. In *Clabourne v. Lewis*, 64 F.3d 1373 (9th Cir.1995), for example, Clab-

ourne's counsel was aware of evidence that would have supported a case for mitigation, but failed to introduce that evidence at the sentencing hearing. *See id.* at 1386. As the court noted, Clabourne's attorney "did not call any witnesses, introduce any evidence of Clabourne's history of mental illness, or argue any mitigating circumstance...." *Id.* at 1383. According to the *Clabourne* court, the failure to introduce evidence, available to counsel at the time of the sentencing hearing, and central to the defendant's case, amounted to deficient performance under *Strickland. See id.*

Likewise, in *Correll v. Stewart*, 137 F.3d 1404 (9th Cir.1998), the defendant argued that his counsel rendered ineffective assistance by failing to introduce relevant evidence at his sentencing hearing. As the *Correll* court observed, "Correll's attorney failed to call witnesses or present any evidence at the pre-sentencing hearing, although he stated on the record that he knew of people who were willing to testify on Correll's behalf." *Id.* at 1412. Again, the court concluded that the defense counsel's failure to introduce evidence clearly central to the defendant's case amounted to deficient performance. *See id.*

 To succeed on his ineffective assistance of counsel claim, Hart also must show that he was prejudiced by defense counsel's failures to investigate and introduce into evidence Kendall's records. He must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

The district court denied Hart's petition on the ground that Hart failed to show prejudice.[9] The court believed that the evidence against Hart was so overwhelming that there was not a reasonable probability that the result of the trial would have been different had petitioner's counsel introduced the Kendall receipts and records. We do not quarrel with the district court's method of analysis. In *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986), we held that "ineffective assistance claims ... must be considered in light of the strength of the government's case." Indeed, we have also held that a defense attorney's failure to call a relevant witness or introduce relevant evidence is not prejudicial under *Strickland,* in a case where the evidence against the defendant is "overwhelming." *See, e.g., United States v. Harden,* 846 F.2d 1229, 1231 (9th Cir.1988). Here, however, the record simply fails to support the district court's conclusion.

Both the state and the district court point to several pieces of evidence to support their assertion that the evidence against Hart was "overwhelming." At trial, the prosecution introduced the transcript of a telephone conversation between Hart and Nancy Lamp—Hart's ex-wife and Jennifer's mother—and a letter written by Hart to Lamp. In both, Hart admits that he had, at some point in the past, sexually molested his daughter. For example, during the telephone conversation which took place in December of 1989, the following exchange took place:

[Lamp]: Jim, this is Nancy.

[Hart]: Oh, hi Nancy.

[Lamp]: Um, I've talked to Jennifer.

[Hart]: Uh huh.

[Lamp]: And she told me about how you molested her. Why did you do it?

[Hart]: I was sick at the time.

While the transcript amounts to an admission that Hart had molested his daughter, there is no indication from the transcript that Hart molested her during the time period charged in the information. The telephone conversation simply does not provide support for the state's case that Hart molested Jennifer during the essential period of time. Indeed, Hart claimed during the conversation that no misconduct had occurred for several years:

[Hart]: I was sick at the time.

[Lamp]: Well, are you still sick?

[Hart]: No I'm not.

[Lamp]: How do you know you're not going to do it again?

[Hart]: Because I haven't done it for a long time.

The prosecution also introduced a letter written from Hart to Lamp shortly after the phone call took place. In the letter, Hart again admits that he had molested Jennifer at some point in the past. The letter, however, provides no evidence that Hart molested Jennifer during the period of time charged in the information, but rather supports a contrary conclusion. In the letter, Hart admits that he molested Jennifer as a result of what he termed a "psycho-sexual disorder" and a "psychosis." He goes on to write, however, that he "transcend[ed][his] psychosis" and received "a clean bill of psychological health in 1986."

The prosecution also introduced into evidence material seized by the police from

---

**9.** The district court did not conduct an inquiry into whether Hart demonstrated deficient performance. Instead, it concluded that "even if counsel had introduced Kendall's records and receipts at trial, Hart has failed to show a reasonable probability that the outcome of the trial would have been any different."

Hart's residence. The parties dispute the weight and effect of this evidence. It is clear, however, that these materials do not bear on the question on which Hart's petition turns: whether the state established that Hart molested his daughter during the one-year period charged in the information.[10]

In short, contrary to what the district court held and to what the state argues, the evidence against Hart was far from overwhelming as to the specific charges on which he was convicted—that he molested Jennifer between September 1986 and August 1987.

Here, given Jennifer's testimony that Hart molested her only at the R–Ranch and then only when he was not accompanied on the weekend trip by another adult, if the jury believed Kendall it could not have found Hart guilty beyond a reasonable doubt of the charges contained in the information, or at the least there is a reasonable probability that its verdict would have been different. Because Kendall's receipts and records provided remarkably strong corroboration for her otherwise uncorroborated testimony, their introduction in all likelihood would have convinced the jury that she was not simply a biased witness or one who was not in possession of all the facts; rather they would probably have been compelled to conclude that she was telling the truth: that she did, in fact, accompany Hart each time he brought Jennifer (and her brother) to the ranch during the period covered by the information. When defense counsel fails to introduce this type of evidence—evidence that corroborates a key defense witness whom the jury might otherwise not believe—confidence in the outcome is necessarily undermined.[11]

Hart has therefore succeeded in demonstrating that defense counsel's failure to investigate and introduce the records corroborating Kendall's testimony was deficient performance and that the failure was prejudicial. Under *Strickland*, he has shown that his attorney rendered ineffective assistance of counsel.

### III.

### CONCLUSION

Under these circumstances, Hart's conviction cannot stand. The district court's order denying Hart's petition for a writ of habeas corpus is therefore **REVERSED.** We **REMAND** to the district court and **ORDER** that the writ issue.

10. The district court also pointed to the testimony of Hart's half-sister, Mary Roach. Roach testified that Hart believed there is "nothing wrong with incest. That other cultures in the world see it as no problem." Again, however, the testimony does not establish when Hart told Roach of this belief. Indeed, she was asked if Hart had told her anything about his ideas on incest "[f]rom about 1984 to the present." More importantly, Hart's beliefs about the morality or immorality of incest do not constitute evidence of criminal propensity or activity. *See, e.g., Guam v. Shymanovitz*, 157 F.3d 1154, 1159 (9th Cir.1998) ("the underlying premise of our criminal system [is] that the defendant must be tried for what he did, not who he is")(internal citations omitted).

11. The fact that the R–Ranch records were introduced into evidence by the prosecution does not alter our conclusion. Although those records might have been used to support Kendall's claim that she was with Hart each time he brought his children to the ranch, defense counsel made no argument to that effect either during cross-examination or in his closing argument. The records themselves, moreover, in no way confirmed Kendall's testimony that she was with Hart each time he took his children to the ranch; they showed only the total number of people in Hart's party. Accordingly, despite the prosecution's introduction of the R–Ranch records, defense counsel's failure to introduce Kendall's own records left the jury with nothing to corroborate Kendall's story. Despite the prosecution's introduction of the R–Ranch records, therefore, we are convinced that there is a reasonable probability that the result of the proceeding would have been differ-

ent had petitioner's counsel introduced Kendall's own records.