Filed 4/28/22  P. v. Sweeden CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL BRIAN SWEEDEN,<br><br>Defendant and Appellant. | F081682<br><br>(Super. Ct. No. 19CMS2843)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert Shane Burns, Judge.

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Russell Brian Sweeden was convicted, following a court trial, of one count of lewd or lascivious acts with a child under 14 years of age (Pen. Code,[1] § 288, subd. (a); count 2). The court further found appellant had engaged in substantial sexual conduct with the victim (§ 1203.066, subd. (a)(8)). Appellant was denied probation and sentenced to the middle term of six years.

On appeal, appellant makes several claims of ineffective assistance of counsel. He claims his trial counsel provided ineffective assistance based on his failures to: (1) move for mistrial or otherwise seek remedy for the information referencing an act not shown by evidence at the preliminary hearing; (2) obtain an expert to test and testify about the DNA evidence the prosecution presented; (3) cross-examine the prosecution's DNA expert witness on the transfer of "trace-DNA"; (4) object to the prosecution's manner of questioning the minor victim; and (5) obtain an expert in the psychology of young victims of sexual abuse as the victim testified she had previously been sexually abused by individuals other than appellant.

Finding no ineffective assistance of counsel on the record before us, we affirm the judgment.

## FACTS

On June 15, 2019, six-year-old L.H. and her cousin went to appellant's house to go swimming with some other children, where appellant was the only adult present. L.H. testified to three acts of sexual touching by appellant which occurred that day.

When L.H. was changing into her bathing suit in the bathroom of the residence, appellant went in and asked L.H. if she needed help. L.H. responded that she did not, but appellant pulled up her bathing suit anyway. While doing so, appellant touched L.H. on her vagina.

---

[1] All further undesignated statutory references are to the Penal Code.

2.

L.H. then went swimming with the other children and appellant. While L.H. was in the pool sleeping on a floaty, appellant approached and held her and touched her on the inside of her swimsuit on her vagina.

L.H. later went into the house to play with a cat. She ended up in the bedroom of the residence lying on the floor and reaching under the bed to try to get to the cat. Appellant came in and touched her bottom with his open hand. She felt his hand go inside her body. When she came out from under the bed, she noticed appellant was not wearing any shorts, and she could see his "private part."

L.H. testified that she had previously been molested by her brothers, but she was sure it was appellant that touched her on that day.

L.H. underwent a SART exam the following day and external swabs were taken from her vestibule, vulva, and anus. Trace amounts of "male signal" were found on the vulvar swab, and appellant, as well as all of his male descendants, could not be eliminated as the contributor. The results would be present in 1 in 97 in a Caucasian population, 1 in 154 in an African American population, and 1 in 124 in a Hispanic population.

Hanford Police Department Detective Raymond Dias testified he discussed L.H.'s allegations with appellant and appellant gave no explanation as to why L.H. would make the allegations. Appellant initially denied touching or penetrating L.H.'s vagina either with his hand or penis. Appellant recalled pulling L.H. out from under the bed, but his statement changed regarding whether he touched her. First, he denied any touching, then stated he grabbed her by her hips and may have touched her vagina, and then stated he recalled his hand touching her vagina on the outside of her clothes. On cross-examination, Dias further testified that he conducted a search of appellant's home and found no child pornography or anything that would warrant further investigation.

3.

## DISCUSSION

### I.      General Legal Principles

To prevail on an ineffective assistance of counsel claim, appellant must establish that (1) the performance of his trial counsel fell below an objective standard of reasonableness and (2) prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

To establish prejudice under *Strickland*, appellant " 'must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." ' " (*In re Cox* (2003) 30 Cal.4th 974, 1016.) " '[I]t is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." ' [Citation.] To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.] 'The likelihood of a different result must be substantial, not just conceivable.' " (*People v. Rogers* (2016) 245 Cal.App.4th 1353, 1367.)

## II.   Counsel's Failure to Seek Remedy for the Allegation of the "Incident in Bathroom" in the Second Amended Information

### A.   *Relevant Background*

The preliminary hearing was held on the first amended complaint, which charged as to count 2, lewd acts against L.H. based on "touch[ing] vagina while L.H. was under bed." At the preliminary hearing, Dias testified regarding two sexual acts involving L.H.—one occurring under a bed in the bedroom and one in the pool. The court held appellant to answer to count 2 based on the bedroom incident. However, count 2 of the information, filed September 5, 2019, named the act underlying the charge as "penis to anus in bathroom." A second amended information was filed June 17, 2020, which named the act underlying count 2 as the "incident in bathroom."

The crux of appellant's argument is that defense counsel had a duty to seek remedy for the naming of the "incident in bathroom" in the second amended information, where no evidence regarding any incident occurring in the bathroom was presented at the preliminary hearing, and counsel's failure to do so constituted ineffective assistance of counsel. We include a somewhat detailed history of the several iterations of the charging document in this case to give context to the underlying alleged prosecutorial error, the court's trial findings, and appellant's claims.

### 1.   Complaint and First Amended Complaint

On June 17, 2019, the Kings County District Attorney's office filed a complaint charging appellant with seven offenses: sexual intercourse and sodomy with victim H.F. (§ 288.7, subd. (a); count 1); lewd acts by force or fear[2] against H.F., to wit: "penis to anus in bathroom" (§ 288, subd. (b)(1); count 2); lewd acts by force or fear against H.F., to wit: "touched vagina while H.F. was under the bed" (§ 288, subd. (b)(1); count 3);

---

[2]   We use "force or fear" as shorthand. Section 288, subdivision (b) criminalizes touching described by section 288, subdivision (a)—touching of a child under 14 years of age with sexual intent—"by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

lewd acts against H.F., to wit: "hand to vagina over bathing suit in the swimming pool" (§ 288, subd. (a); count 4); lewd acts against H.F., to wit: "hand to vagina under bathing suit in the swimming pool" (§ 288, subd. (a); count 5); lewd acts against L.H., to wit: "hand to buttocks, first time" (§ 288, subd. (a); count 6); and lewd acts against victim L.H., to wit: "hand to buttocks, last time" (§ 288, subd. (a); count 7). The complaint also alleged as special allegations that appellant committed the alleged offenses against multiple victims (§§ 667.61, subds. (a), (e), 1203.066, subd. (a)(7)) and engaged in substantial sexual conduct with L.H. (§ 1203.066, subd. (a)(8)).

A first amended complaint was filed without objection from the defense on August 8, 2019. The first amended complaint corrected the names of the victims and completely deleted two counts: count 2 (§ 288, subd. (b)(1) "penis to anus in bathroom"); and count 5 (§ 288, subd. (a) "hand to vagina under bathing suit in the swimming pool"). The first amended complaint charged appellant with five offenses: sexual intercourse and sodomy with victim L.H. (§ 288.7, subd. (a); count 1); lewd acts by force or fear against L.H., to wit: "touched vagina while L.H. was under bed" (§ 288, subd. (b)(1); count 2); lewd acts against L.H., to wit: "hand to vagina over bathing suit in the swimming pool (§ 288, subd. (a); count 3); lewd acts against victim S.W., to wit: "hand to buttocks, first time" (§ 288, subd. (a); count 4); and lewd acts against S.W., to wit: "hand to buttocks, last time" (§ 288, subd. (a); count 5). The first amended complaint further alleged special allegations under sections 1203.066, subdivision (a)(7) and (a)(8) and 667.61, subdivisions (a), (e).

## 2. Preliminary Hearing

A preliminary hearing on the first amended complaint was held before Judge Robert Burns. Detective Raymond Dias was the sole witness for the prosecution. He testified that L.H. had disclosed during a MDIC (multidisciplinary interview center) interview that while swimming at appellant's house, L.H. went under the bed in the master bedroom to chase a cat. While L.H. was under the bed, appellant removed his

pants and L.H.'s clothing and put his penis in her vagina. L.H. further disclosed that while she was in the pool, appellant pushed her off a raft with his hand on her butt. Dias did not testify regarding any act of sexual abuse that took place in a bathroom.

Dias further testified that L.H.'s relative, S.W., disclosed in a MDIC interview that she was also present the day L.H. was swimming at appellant's house and that she also felt uncomfortable by the way he was touching her butt in the pool. S.W. also disclosed on a previous occasion a month before the interview, appellant had touched her lower back and butt on the outside of her clothing.

During argument, the court asked the prosecutor: "So what's your evidence of Count 2, touching the vagina while L.H. was under the bed? There was testimony that he pulled her out from under the bed and then had sexual intercourse with her." The prosecutor responded, "Yes, that's just an alternate theory. It's not—the People aren't moving forward with that as a separate completed act. It's an alternate theory of Count 1."

The court held appellant to answer on counts 1 and 2 based on the bedroom incident and found insufficient evidence to hold appellant on counts 3, 4, and 5—the counts involving appellant touching L.H. in the pool and both counts involving offenses against S.W. Accordingly, the court found insufficient evidence as to the multiple victims special allegations but found sufficient evidence to support the allegation there was substantial sexual conduct with L.H.

### 3. Information, First Amended Information, and Second Amended Information

The information was filed September 5, 2019. It contained two counts: sexual intercourse and sodomy with victim H.F. (§ 288.7, subd. (a); count 1); and lewd acts by force or fear against H.F., to wit: "penis to anus in bathroom" (§ 288, subd. (b)(1);

7.

count 2). It was further alleged appellant engaged in substantial sexual conduct with H.F. (§ 1203.066, subd. (a)(8)).[3]

A first amended information was filed on March 18, 2020, with no objection from the defense. It was identical to the information, except it corrected the name of the victim from "H.F." to "L.H."

On June 17, 2020, the prosecutor tendered a second amended information to the court stating, "it doesn't change any of the charges, it just relabels an incident more narrowly as to Count 2." Defense counsel indicated he had received the document and submitted the matter to the court. The prosecutor explained the "anatomical description" was removed but the location of the bathroom remained the same. The court accepted the filing.

The second amended information charged appellant with sexual intercourse and sodomy (§ 288.7, subd. (a); count 1) and lewd and lascivious acts against a child under 14 years of age by force or fear (§ 288, subd. (b)(1); count 2) against L.H. As to count 2, the information named the "incident in bathroom" as the act underlying the offense. It was further alleged appellant had engaged in substantial sexual conduct (§ 1203.066, subd. (a)(8)).

### 4. Court Trial and Verdict

Appellant waived his right to a jury trial. A court trial on the second amended information was held before Judge Robert Burns. L.H. testified, as we have detailed above, to three sexual acts: that on the day in question, appellant (1) touched her vagina

---

[3]     Counts 1 and 2 in the information are identical to counts 1 and 2 in the *original* complaint, rather than the counts as they appear in the *first amended complaint*. It appears that the information was modeled, erroneously, and likely inadvertently, after the original complaint rather than the first amended complaint, which is why "penis to anus in bathroom" was listed as the act underlying count 2, rather than "touched vagina while L.H. was under bed."

in the bathroom; (2) touched her vagina in the pool; and (3) penetrated her rectum in the bedroom.

Following the evidence portion of the trial, the prosecutor moved to dismiss count 1 (§ 288.7) based on the evidence presented, which the court granted. The court then directed counsel to focus their arguments on the force element of section 288, subdivision (b)(1), as well as substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8).

As to the force element, the prosecutor argued the element was satisfied based on a theory appellant used duress to accomplish the offense. The prosecutor argued that the court could consider the relationship between appellant and L.H. and the fact that appellant engaged in "multiple acts of touching" and that L.H. testified she felt nervous during the bathroom and bedroom incidents. The prosecutor further argued that the court could consider L.H.'s age and appellant's relative size and demeanor. In response to this line of argument, the court stated, "Didn't you allege—your pleading alleges it is the incident in the bathroom, which was the first of the three." The court went on to say, "So the subsequent actions wouldn't add to duress or fear. The first would have to be duress or fear for those, but those aren't the ones charged, correct?"

The prosecutor responded: "That is correct, your Honor. And I apologize for that I forgot about that allegation. The bottom line, your Honor, the bathroom incident I believe supports the People's theory as to fear and duress more directly." The prosecutor argued that the circumstances of the incident as well as appellant's and L.H.'s relative ages and statures and her testimony she was scared satisfied the force or fear element.

As for substantial sexual conduct, the prosecutor argued L.H.'s testimony that she felt pain when appellant touched her and the DNA evidence supported a true finding as to substantial sexual conduct.

Defense counsel argued that the force/duress element was not met because the bathroom incident was the first incident; he further argued that the DNA swabs were only

9.

taken from exterior areas of L.H. and thus could not be relied upon as evidence there was substantial sexual conduct. Defense counsel also pointed out that L.H. gave conflicting testimony as to the bathroom incident, primarily as to where her bathing suit was during the incident.

In ruling, the court stated it did not find sufficient evidence of the force/duress element of section 288, subdivision (b)(1). Instead, the court found that the People had proven beyond a reasonable doubt appellant had violated the lesser included offense of section 288, subdivision (a) and found appellant guilty of that charge.

As for whether there was substantial sexual conduct during the commission of the offense, the court stated:

> "… I would note that Count 2 was alleged to be the incident that took place in the bathroom, and it was not alleged as the incident in the pool or in the bedroom took place on the same date during the same visit some point in time after that.… [¶] … All the evidence of the DNA was on the exterior of the vulva if I recall correctly, which does not necessarily indicate penetration. The minor's testimony was that during the incident in the bedroom that she felt that she was being touched inside. It wasn't an exterior touch that she felt the defendant inside of her. That is evidence of penetration, and there wasn't sufficient evidence to support it was a penis that penetrated her, which would have supported Count 1.

> "The substantial sexual conduct includes both penile penetration as well as any other body part, not a sexual organ such as digital penetration, and that appears to me to be proven beyond a reasonable doubt. I supposed you could take a hyper look at that and say, well, Count 2 only involved the incident in the bathroom, but this was an ongoing sexual assault that took place at the same location during the same visitation within the house. And in my opinion that means that the sexual assault itself was ongoing, and that the sexual assault involved substantial sexual conduct, and I find that that has been proven true beyond a reasonable doubt, so I find that as well."

**B.** *Analysis*

As we have stated, appellant argues counsel provided ineffective assistance by failing to move for a mistrial or otherwise seeking remedy for the naming of the "incident

in bathroom" in the second amended information when no evidence regarding any act of sexual abuse in the bathroom was presented at the preliminary hearing. Appellant contends counsel failed to protect his due process rights and other state and federal constitutional and statutory rights because he (1) was not given sufficient notice of the charge and (2) was ultimately convicted for an offense which was not part of the magistrate's determination of probable cause, and counsel sought no remedy.

Appellant spends much of his briefing arguing his rights to notice and due process were violated by the information naming the "bathroom" as the place where the offense occurred. While he raises somewhat interesting questions regarding what constituted proper notice and to what detail the sexual abuse allegation needed to be described in the preliminary hearing under the circumstances of this case, we need not reach them, as we need not and do not determine whether counsel's alleged failures amounted to deficient performance. Rather, we reject appellant's claim because he cannot show prejudice under *Strickland*. (See *In re Cox*, *supra*, 30 Cal.4th at pp. 1019–1020, quoting *Strickland* [" '[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' "].)

Here, had appellant's trial counsel objected to the naming of the bathroom incident in the information, respondent contends that the People would have been able to successfully amend the information to reflect the bedroom incident, and we agree. A trial court may, in its discretion, permit amendment of the information at any stage of the proceedings provided the amendment does not "charge an offense not shown by the

evidence taken at the preliminary examination." (§ 1009.) If the defendant's substantial rights would be prejudiced by the amendment, the court may grant a reasonable continuance not longer than the ends of justice require. (§ 1009.) Here, Dias testified as to appellant committing lewd acts against L.H. in the bedroom while she was looking for a cat. The court expressly held appellant to answer on counts 1 and 2 based on this incident, and it is worth noting that it appears from a close reading of the record the People would have named the bedroom incident in the information in count 2 in congruence with the court's findings, but for an apparent clerical error (see fn. 3, *ante*, p. 8). Dias' testimony was sufficient to support an amendment to conform to L.H.'s testimony regarding the touching in the bedroom.[4] Appellant does not respond to respondent's contention that the People would have been able to amend the information to reflect the bedroom incident and gives no explanation as to how he would have been prejudiced had the court allowed such an amendment.[5] To the contrary, we see no reason on this record why the People would not be able to amend the information to reflect the bedroom incident. Appellant was clearly prepared to defend against the bedroom incident because he had adequate notice from the preliminary hearing holding order and transcript that the People were relying on the bedroom incident to prove count 1 (§ 288.7) without regard to the bathroom incident being named under count 2.

Had counsel objected and the amendment been made, we cannot conceive of any reasonable probability of a more favorable result for appellant. The trial court expressly

---

[4]    We acknowledge Dias testified that appellant had sexual intercourse with L.H., and L.H. testified that appellant penetrated her rectum with his open hand. We do not find such a discrepancy is one that affects whether appellant was put on proper notice but rather goes to the credibility of L.H. should the defense have chosen to impeach her testimony with her previous statement.

[5]    Rather, in his briefing, appellant appears to concede the People could have properly proceeded on the bedroom incident. On page 56 of appellant's opening brief, appellant states, "Legally, the court could only convict appellant on count 2 solely for the bedroom incident as an alternate theory to count 1."

12.

found that appellant had penetrated L.H.'s rectum constituting substantial sexual conduct within the meaning of section 1203.066 based specifically on the *bedroom* incident beyond a reasonable doubt.[6]  By finding the act in the bedroom constituted substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8), the trial court necessarily found appellant had violated section 288, subdivision (a) based on the bedroom incident beyond a reasonable doubt.[7]  Thus, it is clear the court would have convicted appellant of count 2 based solely on the bedroom incident had the People amended count 2.

We acknowledge it is appellant's position that the trial court was not permitted to hear or consider any evidence of acts of sexual abuse other than the bedroom incident. Appellant contends L.H.'s testimony of any uncharged acts constituted "illegal evidence" that appellant should have objected to on the ground appellant was not held to answer to charges arising from those acts at the preliminary hearing.  We reject this argument, and it does not alter our conclusion appellant cannot show prejudice resulting from counsel's failure to object to the second amended information.

Appellant does not cite any authority to support his contention that L.H.'s testimony regarding all acts was inadmissible, and his contention that they were is misplaced.  Appellant ignores that fact finders in sexual offense cases are permitted to

---

[6]     Section 1203.066, subdivision (a)(8) provides, as relevant here, that probation shall not be granted to "[a] person who, in violating Section 288 or 288.5, has substantial sexual conduct with a victim who is under 14 years of age." As defined by the statute, " '[s]ubstantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender.' "  (§ 12033.066, subd. (b).)

[7]     Further, it appears to us appellant may well have received a more serious conviction and harsher sentence had the People made the amendment to reflect the bedroom incident rather than the bathroom incident.  We note the court expressly rejected the prosecutor's argument appellant had employed duress or fear based on there being multiple incidents because the bathroom incident was the first act.

13.

consider evidence of uncharged sexual offenses in determining whether a defendant has a disposition to commit a sexual offense and thus more likely to commit the charged offense or more generally to find, for example, motive, intent, or absence of mistake or accident. (Evid. Code, §§ 1108, 1101, subd. (b).) Thus, in the event of an amendment of the information to name the bedroom incident rather than the bathroom incident, L.H. could have still properly testified to other acts, and the court could have considered them in making its findings pursuant to the applicable provisions of the Evidence Code. As this was a court trial, we presume the court could properly identify and apply the applicable laws and burdens of proof. Indeed, we cannot see on this record how the evidence portion of the trial or the court's ultimate findings would have been different had the People amended the information, which, as we have stated, would have been appropriate under the circumstances.

We are not persuaded by the cases appellant cites to support his position that he suffered prejudice as a result of counsel's alleged failures or that the matter is per se reversible. (E.g, *People v. Burnett* (1999) 71 Cal.App.4th 151; *People v. Graff* (2009) 170 Cal.App.4th 345.) In these cases, the appellate courts' analysis of the jury's findings raised affirmative doubt as to whether the jury had convicted the defendant on an improper theory or offense not shown by evidence at the preliminary hearing. (*Burnett*, at pp. 182–183; *Graff* at pp. 367–368.) That is not the case here, where, as we have explained, the court's express findings leave no doubt that the court would have convicted appellant of count 2 solely on the bedroom incident had that been the named act underlying the charge.[8]

---

[8]    Appellant states several times in his briefing that the court rested its verdict "illegally" on "all three" incidents based on its comment that "this was an ongoing sexual assault that took place at the same location during the same visitation within the house. And in my opinion that means that the sexual assault itself was ongoing." We do not agree with appellant's interpretation. Rather, the record indicates the court was cognizant the bathroom incident was the charged incident in count 2, as this fact affected its

14.

Given our conclusion that in the event counsel had objected to the act named in the information, the prosecution would have successfully been able to amend the information to name the bedroom incident rather than the bathroom incident, and the court's express findings, there is no reasonable possibility that appellant would have received a more favorable outcome had trial counsel sought a remedy for the information naming the bathroom incident. Appellant cannot show ineffective assistance of counsel on this ground.

## III. Counsel's Failure to Obtain Expert Witnesses

### A. *Failure to Obtain an Expert Witness to Test and Testify About DNA Evidence*

Appellant contends counsel provided ineffective assistance of counsel by failing to obtain an expert to independently test the swabs from L.H.'s SART exam and testify about the DNA evidence. We conclude appellant cannot show trial counsel's performance was deficient on this record. There is no indication in the record whether trial counsel consulted a DNA expert, that the analysis of the DNA was incorrect, whether such an expert would have been able to provide favorable testimony, or why

findings. As we have discussed, the court expressly rejected the prosecutor's argument that the force/duress element of section 288, subdivision (b) was met because appellant had already committed an act of sexual abuse because the *charged* incident was the bathroom incident and the first incident, rendering the prosecutor's argument impossible.

In context, by commenting there was an "ongoing sexual assault," the court was justifying its decision to find appellant had engaged in substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8) based on the bedroom incident rather than the bathroom incident. We do not express any opinion on whether this was appropriate because it is not necessary under the circumstances of this case. As relevant to our analysis, the court's comments indicate it found appellant had committed all three acts to which L.H. testified. Of particular relevance to our analysis—that the court found beyond a reasonable doubt appellant had committed lewd acts constituting substantial sexual conduct specifically based on the bedroom incident—renders any error clearly harmless. As we explain in the body of this opinion, the court was not prohibited from considering all acts in determining its verdict, as they all appeared admissible pursuant to Evidence Code sections 1108 and/or 1101, subdivision (b).

counsel determined not to present an expert at trial.  (See *People v. Adkins* (2002) 103 Cal.App.4th 942, 950–951; see also *People v. Datt* (2010) 185 Cal.App.4th 942, 952–953; *United States v. Tarricone* (2d Cir. 1993) 996 F.2d 1414, 1419–1420 [on appeal challenging denial of a postjudgment evidentiary hearing on ineffective assistance of counsel, while appellate court found appellant made a "plausible" claim as to counsel's failure to obtain a handwriting expert, a finding of *Strickland* prejudice was not possible on the appellate record].)  Nor is this a case where there was a clear reason on the record to follow up on the prosecution's scientific evidence.  (See, e.g., *Baylor v. Estelle* (9th Cir. 1996) 94 F.3d 1321 [prosecution's criminalist report included express conclusion the defendant was likely eliminated as the semen donor in a sex case and further analysis was necessary to test theory by which he could be the donor, and counsel did not follow up by consulting an independent expert].)

According to appellant, the record discloses a defense DNA expert was necessary because "[i]lluminating details, such as the fact that immediately after or during an incident, [L.]H. testified that she was in appellant's pool, which was presumably chlorinated, or that she remained at appellant's home for a couple of hours after the incidents occurred, would have benefitted the defense and cast doubt upon the prosecution's evidence."  Appellant further contends the possibility that trace DNA could have "innocently transferred" because, for example, L.H. could have used a towel or clothes that appellant or his son may have used.  Appellant also notes the SART exam took place the following day.

In light of these factors, the possibility of "innocent" transfer of trace DNA is remote, based on the record before us.  There is no evidence on this record of the effect, if any, swimming would have on trace DNA; that L.H. used a towel or clothes appellant or his son used; or the effect, if any, of the SART exam taking place the following day on the ultimate results.  Absent such evidence, the introduction of the mere possibility of

innocent transfer of the DNA had low probative value and was not reasonably likely to cast doubt on the prosecution's evidence.

We also reject appellant's suggestion the record discloses sufficient evidence the DNA analysis was incorrect or unreliable, necessitating a defense DNA expert. In this respect, appellant points out that the forensic criminologist who initially examined the swabs testified that trace DNA was found on the vulva and *vestibule* swabs, and the criminologist who oversaw the further Y chromosome STR analysis testified the vulva and *anal* swabs were submitted for testing. We disagree with appellant that the inconsistency between which swabs were analyzed is significant or in any way indicates the DNA analysis was incorrect, in light of the consistent testimony that the vulva swab was submitted for further analysis and was the swab that contained the sample consistent with appellant's. Thus, whether it was the anal swab or the vestibule swab that was also submitted for further analysis is not relevant in light of the fact neither was alleged to contain a sample consistent with appellant's.

In a related claim, appellant argues his trial counsel was ineffective for failing to cross-examine the prosecution's DNA expert on the possibility of innocent transfer of trace DNA. We cannot find counsel was deficient on this record. As we have stated above, there is no evidence on this record that trace DNA was "innocently transferred," such as by L.H. sitting on appellant's couch or using a towel appellant had used. Thus, any evidence that innocent transfer was theoretically possible based on hypotheticals for which no evidence was presented had low probative value.

We conclude appellant cannot show ineffective assistance of counsel for failure to obtain a defense DNA expert or to cross-examine the prosecution's DNA expert on the possibility of innocent transfer of trace DNA.

**B.** *Failure to Obtain an Expert to Testify on the Psychology of Young Victims of Sexual Abuse*

Appellant also contends his trial counsel should have obtained an expert on the psychology of young victims of sexual abuse. Appellant contends that an expert could have testified as to the effect of L.H.'s previous sexual abuse by her brothers on "memory loss … and the ability to perceive and recall."

Appellant cannot show his counsel's performance was deficient on this ground, where the record does not disclose whether counsel consulted with such an expert, whether such an expert could provide favorable evidence, or whether counsel had a reason for not presenting such evidence. (See *People v. Adkins*, *supra*, 103 Cal.App.4th at pp. 950–951.) Further, on this record, such evidence appears to have low probative value given L.H. testified she was sure it was appellant who molested her even in light of her previous abuse by her brothers.

We conclude appellant cannot show ineffective assistance of counsel for failure to obtain an expert witness on the psychology of young victims of sexual abuse.

## IV. Counsel's Failure to Object to the Prosecutor's Alleged Improper Questioning of L.H.

Appellant contends his trial counsel was ineffective for failing to object to the prosecutor's questioning of L.H., who was seven years old when she testified. Appellant identifies two lines of questioning he contends trial counsel should have objected to. The first occurred when L.H. was testifying about the act which occurred in the bathroom:

> "[Prosecutor].    And how did it feel when he touched you on your private part?
>
> "[L.H.]    Scared.
>
> "[Prosecutor].    Scared. [L.H.], when we talk about how we feel, we talk about how our brain feels about something and then how our body feels about something. Do you understand how those can be different sometimes?
>
> "[L.H.]    Yes.

18.

"[Prosecutor].      Like I feel nervous standing up here talking, but my body feels fine.  My feet hurt because I am in uncomfortable shoes, but my body feels fine other than that.  So when we talk about [appellant] touching your private part where you go pee, tell me how your body felt when that was happening?

"[L.H.]      Worried, and it felt hurt."

The second occurred when L.H. was testifying about the act in the bedroom:

"[Prosecutor].      … And how did it feel when he was touching your bottom?  How did your body feel when he was touching your bottom?

"[L.H.]      Scared.

"[Prosecutor].      Scared.  Did your body feel anything else?

"[L.H.]      Um, yes.

"[Prosecutor].      Can you tell me what that is?

"[L.H.]      It felt worried.

"[Prosecutor].      It felt worried.  Do you remember how I talked about sometimes our brain feels things, and sometimes our body feels things?

"[L.H.]      Yes.

"[Prosecutor].      And sometimes like I told you right now, I am nervous standing up here and talking to you but my feet hurt because of my shoes.  When we talk about [appellant] touching your bottom, can you tell me how your body felt?

"[L.H.]      It felt hurt.

"[Prosecutor].      It felt hurt.  How long do you think that lasted for?

"[L.H.]      Um, for a couple of minutes."

Appellant contends the questions were inappropriately repetitive and improperly leading or suggestive.  To support his contention, he cites general academic studies and law review articles discussing children's susceptibility to suggestive questioning techniques, including repeated and leading questions.  Notably, he cites no specific legal basis on which trial counsel should have objected to the questioning.

In any event, we reject appellant's claim, as it appears any objection appellant could have made would have been futile.  (*People v. Price* (1991) 1 Cal.4th 324, 387 [counsel's failure to make a futile or unmeritorious objection is not deficient performance].)  First, a court may sustain an objection to questions that have been "asked and answered in substantially the same form."  (3 Witkin, Cal. Evidence (5th. ed. 2021) Presentation, § 183.)  " 'Where a question is asked and answered in a manner which … indicates that no different answer could probably be given to the same question, the trial court is not bound to have its time consumed by having such question uselessly repeated.' "  (*Ibid.*)  Here, the prosecutor was not "uselessly" repeating the same question; she was seeking clarification from L.H. between how she felt emotionally and how she felt physically.  Further, as respondent points out, leading questions are permitted of victims under 10 years of age in cases involving a prosecution under any of a list of enumerated sexual offenses, including subdivisions (a) or (b) of section 288.  (Evid. Code, § 767; Pen. Code, § 11165.1, subd. (a).)

We conclude appellant cannot show ineffective assistance of counsel for failure to object to the prosecutor's questioning of L.H.

## DISPOSITION

The judgment is affirmed.

DE SANTOS, J.

WE CONCUR:

HILL, P. J.

SMITH, J.

20.